STATE OF NORTH CAROLINA v. PERCY ROBERT MOORMAN

No. 8610SC1

(Filed 2 September 1986)

1. **Rape and Allied Offenses § 3— second degree rape—indictment alleged force—evidence showed physically helpless—fatal variance**

The trial court erred by denying defendant's motion to dismiss a charge of second degree rape where the indictment alleged that defendant carnally knew the prosecutrix by force and against her will and the State's evidence tended to show that the prosecutrix fell asleep on her bed in her room, dreamed that she was having sexual intercourse, awoke to find a male on top of her engaging in sexual intercourse, tried to sit up, and was grabbed by the neck and pushed back down. Rape is complete upon penetration and the penetration and initiation of sexual intercourse here was achieved while the prosecutrix was asleep and unable to communicate an unwillingness to submit to the act. N.C.G.S. § 14-27.3, N.C.G.S. § 14-27.1(3).

2. **Rape and Allied Offenses § 5— second degree sexual offense—evidence sufficient**

The evidence of second degree sexual offense was sufficient to withstand a motion to dismiss where defendant admitted anal intercourse with the prosecutrix; the State's evidence indicated that upon awakening and prior to the anal intercourse, the prosecutrix attempted to sit up but defendant grabbed her by the neck and pushed her back down onto the bed with enough force to cause multiple scratches and bruising about the neck; the prosecutrix was then scared that defendant might injure her further and thus offered no other resistance; and, as a result of the anal intercourse, the prosecutrix received a one-half inch tear or fissure in the anus. N.C.G.S. § 14-27.5(a)(1).

3. **Criminal Law § 99.2— comments by trial judge—not prejudicial**

Comments by the trial judge both in and out of the jury's presence were entirely unnecessary and improper but not prejudicial. N.C.G.S. § 15A-1222.

4. **Criminal Law § 88.5— denial of recross-examination—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for burglary and rape by denying defendant the opportunity to recross-examine certain witnesses where the court permitted thorough cross-examination of each of the witnesses and where the material cited as the basis for recross-examination was either not new or was irrelevant to determining guilt or innocence. Sixth and Fourteenth Amendments to the U. S. Constitution.

5. **Jury § 7.14— peremptory challenges—removal of blacks—no error**

Defendant did not meet the standard of *Swain v. Alabama*, 380 U.S. 202, in arguing that the trial court erred by refusing to impanel a new jury after the State used peremptory challenges to remove all blacks from the jury where defendant challenged the exclusion of blacks solely in this case and not in relation to any allegation of a long-term systematic practice by the State of excluding blacks from service on petit juries in Wake County.

**6. Constitutional Law § 48— ineffective assistance of counsel—not prejudicial**

　　The trial court did not err in a prosecution for burglary and rape by denying defendant's motion for appropriate relief based on ineffective assistance of counsel where the court found that counsel's preparation and presentation of defendant's case was inadequate; found that counsel's cross-examination of prosecution witnesses was thorough and aggressive; found that there was no likely possibility that the factfinders would have had a reasonable doubt as to the defendant's guilt even in the absence of errors by counsel; and concluded that defendant had failed to show that his attorney's conduct adversely affected the jury verdict to the extent that the defendant's trial could not be relied on as having produced a just result. The court's findings of fact were supported by the evidence and the facts supported the conclusions of law. Sixth Amendment to the U. S. Constitution, Art. I, §§ 19 and 23 of the North Carolina Constitution.

APPEAL by defendant from *Bailey, Judge*, and *Stephens, Judge*. Judgments entered 29 May 1985 and order entered 9 August 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 13 June 1986.

Defendant was charged with first degree burglary, second degree rape, and second degree sexual offense. The jury returned verdicts finding defendant guilty of misdemeanor breaking or entering, second degree rape, and second degree sexual offense.

After the return of the verdicts but before the sentencing hearing, defendant filed a motion to relieve his trial counsel, Jerome "Jerry" Paul. The court granted the motion. Defendant was thereafter represented by present counsel.

The trial court entered judgments sentencing defendant to two years imprisonment for breaking or entering, twelve years imprisonment for second degree rape, and twelve years for second degree sexual offense, all to be served as a committed youthful offender. The sentences were to be served concurrently. Following sentencing, defendant filed a motion for appropriate relief requesting a new trial on the ground that his trial counsel was ineffective and that he was convicted in violation of the United States and North Carolina Constitutions. The motion was heard and denied.

From the judgments and order, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorneys General David Roy Blackwell, Steven F. Bryant, and John H. Watters, for the State.*

*Tharrington, Smith & Hargrove, by Roger W. Smith, George T. Rogister, Jr., J. David Farren, Burton Craige, and G. Bryan Collins, Jr., for defendant appellant.*

ARNOLD, Judge.

Defendant first contends that the trial court erred in denying his motion for dismissal of the charges of second degree rape and second degree sexual offense based upon insufficiency of the evidence. We hold the trial court properly denied dismissal of the charge of second degree sexual offense. As to the charge of second degree rape, we find there is a fatal variance between the indictment and the proof, and therefore the judgment as to this charge must be arrested.

[1] The indictment for second degree rape in the present case reads:

Date of Offense: September 1, 1984
Offense in Violation of G.S. 14-27.3

The jurors for the State upon their oath present that on or about the date of offense shown and in [Wake] [C]ounty . . . the defendant . . . unlawfully, willfully and feloniously did ravish and carnally know [the prosecutrix], by force and against her will, in violation of N.C.G.S. 14-72.3 (sic).

We note that G.S. 14-72.3 concerns the removal of shopping carts from shopping premises. It is recognized that a reference in an indictment to the specific section of the General Statutes relied upon is not necessary to its validity, and reference to an inapposite statute will not vitiate such an indictment. *State v. McKinnon*, 35 N.C. App. 741, 242 S.E. 2d 545 (1978). Furthermore, the indictment does include reference to the appropriate statute, G.S. 14-27.3.

General Statute 14-27.3 reads in pertinent part:

(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force and against the will of the other person; or

(2) Who is . . . physically helpless, and the person per-
forming the act knows or should reasonably know the
other person is . . . physically helpless.

"Physically helpless" is defined in G.S. 14-27.1(3) as meaning "(i) a
victim who is unconscious; or (ii) a victim who is physically unable
to resist an act of vaginal intercourse or a sexual act or communi-
cate unwillingness to submit to an act of vaginal intercourse or a
sexual act."

The State presented evidence which tended to show the fol-
lowing facts. On the evening of 31 August 1984, the prosecutrix
dated a friend from Charlotte and met with friends. During the
evening she consumed two beers. She returned to her room at ap-
proximately 1:00 a.m. on the morning of 1 September 1984. She
entered her room, closed the door, and turned on the radio to a
low volume. She then fell asleep on her bed fully clothed. The
next thing she remembered was that she dreamed she was having
sexual intercourse. She awoke in a darkened room to find a male
on top of her engaging in sexual intercourse. She tried to sit up,
but the male grabbed her by the neck and pushed her back down
causing multiple scratches about the neck. Afraid that the male
might injure her, she offered no further resistance. After ejacu-
lating in her vagina, the male engaged in anal intercourse with
the prosecutrix, causing a one-half inch tear or fissure in her
anus. She did not resist due to the pain and fear that the male
might strangle her. After the male stopped, she went to the door
and turned on the light. She recognized the face of the male, but
could not remember his name. The male told her not to call the
police, that he was her roommate's friend Percy, that he thought
she was the roommate, and that he would not have done what he
did if he had known she was not the roommate.

The facts of this case present a question of first impression.
The evidence indicates the initiation of sexual intercourse oc-
curred while the prosecutrix was asleep, but that upon awaken-
ing, defendant used force in pushing the prosecutrix back down
upon the bed. General Statute 14-27.3 provides for two distinct
and separate offenses of second degree rape in that force is not
an element of the rape of a physically helpless person. It is well
settled that an indictment will not support a conviction for a

crime, all the elements of which are not accurately and clearly alleged in the indictment. *State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977). The indictment in this case used the language "by force and against her will," giving notice of violation of G.S. 14-27.3(a)(1). The indictment failed to allege that defendant engaged in sexual intercourse with a person who is "physically helpless," which would give notice of a violation of G.S. 14-27.3(a)(2). A person who is asleep is "physically helpless" within the meaning of the statute. Thus, we are faced with the question of whether, given the facts of the case, the State issued a proper indictment for second degree rape.

Our State Supreme Court, in discussing the minimum elements necessary to constitute rape, has stated that ". . . the offense shall be completed upon proof of penetration only." *State v. Monds*, 130 N.C. 697, 41 S.E. 789 (1902). A recent case has also indicated that the force required to constitute rape must be actual or constructive force used to achieve or accomplish the sexual intercourse. *See State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984). Furthermore the language from § 65 Am. Jur. 2d, Rape, §§ 4-6, regarding the element of force, indicates that the force must be used to achieve the sexual intercourse.

In view of the above cited authority and the language of G.S. 14-27.3(a), we hold that the proper indictment for the rape of a person who is asleep is one alleging rape of a "physically helpless" person. In the present case, penetration and the initiation of sexual intercourse was achieved while the prosecutrix was asleep and unable to communicate an unwillingness to submit to the act. Thus, there is a fatal variance between the indictment's allegations that defendant carnally knew the prosecutrix by force and against her will and the proof the State presented at trial. The trial court should have granted the motion to dismiss the second degree rape charge, and the judgment as to that offense must be arrested.

[2] Defendant also asserts that the evidence presented is insufficient to support his conviction of second degree sexual offense. To withstand a motion to dismiss for insufficiency of the evidence, there must be substantial evidence of all material elements of the offense charged. *State v. Keyes; State v. Cashion*, 64 N.C. App. 529, 307 S.E. 2d 820 (1983). In ruling on a motion for dismissal, the

trial judge must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *Id.*

In accord with the indictment, the elements of second degree sexual offense are (1) a sexual act, (2) against the will and without the consent of the victim, (3) using force sufficient to overcome any resistance of the victim. G.S. 14-27.5(a)(1); *State v. Jones*, 304 N.C. 323, 283 S.E. 2d 483 (1981). "Sexual act," as defined by G.S. 14-27.1(4), includes anal intercourse.

Defendant in his testimony admits engaging in anal intercourse with the prosecutrix. The only remaining question is whether there is sufficient evidence that such intercourse was by force and against the will of the prosecutrix. The State's evidence indicates that upon awakening and prior to the anal intercourse, the prosecutrix attempted to sit up but defendant grabbed the prosecutrix by the neck and pushed her back down onto the bed with enough force to cause multiple scratches and bruising about the neck. After this use of force, the prosecutrix was scared that defendant might injure her further, and thus offered no other resistance. As a result of the anal intercourse, the prosecutrix received a one-half inch tear or fissure in the anus. We find this evidence constitutes substantial evidence of all material elements of second degree sexual offense and is thus sufficient to withstand a motion to dismiss.

[3] Defendant's next four assignments of error concern comments made by the court during the trial. G.S. 15A-1222 places a duty on the trial judge to be absolutely impartial. The judge is not to intimate an opinion in any way, but is to insure a fair and impartial trial before a jury.

The challenged remarks in this case were made both in and out of the jury's presence. There is no need to set out all of the excepted statements. The following comment is illustrative:

> DISTRICT ATTORNEY: Object to Mr. Paul making his little noises over there, Judge, whatever that is.

> COURT: Well, for lack of a description, I believe I'll overrule your objection. I thought maybe we had a hog loose in the room. All right, we will stop at this time for lunch. . . .

We do not approve of the judge's comments. Nevertheless, while these gratuitous statements before the jury were entirely unnecessary and improper, we do not find that their probable result was prejudicial to defendant. *See State v. Lofton*, 66 N.C. App. 79, 310 S.E. 2d 633 (1984).

**[4]** Defendant next contends that the trial court erred in denying the opportunity to conduct recross-examination of certain witnesses, and thus violated his right to confront adversarial witnesses guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. We do not agree. The scope of cross-examination rests largely within the discretion of the trial court, and its rulings thereon will not be disturbed absent a clear showing of abuse or prejudice. *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622, 103 S.Ct. 474 (1982). Furthermore, after a witness has been cross-examined and reexamined, unless the redirect examination includes new matter, it is in the discretion of the judge to permit or refuse a second cross-examination, and counsel cannot demand it as of right. 1 Brandis on N.C. Evidence § 36 (2d rev. ed. 1982); *State v. Bunton*, 27 N.C. App. 704, 220 S.E. 2d 354 (1975). The trial court permitted thorough cross-examination of each of the witnesses. The material cited in defendant's brief as the basis for his contention that the trial court erred in restricting or denying recross-examination is either not new matter, or it is irrelevant to determining the guilt or innocence of the defendant. The trial court did not abuse its discretion in restricting a second opportunity to cross-examine, and, in view of the thorough cross-examination of the State's witnesses, defendant's contention that he was denied his right to confront adversarial witnesses is without merit.

Defendant also contends that the trial court erred in failing to issue proper instructions in the charge to the jury. Specifically, defendant brings forth five assignments of error asserting that the court improperly omitted certain instructions and one assignment of error alleging that the court erred in part of the instructions given to the jury. Defendant admits that no objection was made at trial concerning the jury instructions. Therefore, defendant relies upon the plain error rule as adopted in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), in bringing forward these exceptions and assignments of error. Many of the exceptions we need not address since we have arrested judgment as to the

charge of second degree rape. The other exceptions noted by defendant do not rise to the level of plain error, and the assignments of error are without merit.

[5] Defendant also alleges that the trial court erred when it refused to impanel a new jury after the State used peremptory challenges to remove all blacks from the jury. Of the four peremptory challenges exercised by the prosecutor, one was used to remove a black person from the main jury and two were used to remove blacks as alternate jurors. Defendant challenges the exclusion of blacks solely in this case and not in relation to any allegation of a long-term systematic practice by the State of excluding blacks from service on petit juries in Wake County. Defendant's argument is without merit.

The present case is governed by the law as set forth in *Swain v. Alabama*, 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824, *reh'g denied*, 381 U.S. 921, 14 L.Ed. 2d 442, 85 S.Ct. 1528 (1965), and as consistently adopted and applied by our State Supreme Court. *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814 (1986). Our Supreme Court has recently ruled that *Batson v. Kentucky*, --- U.S. ---, 90 L.Ed. 2d 69, 106 S.Ct. 1712 (1986), which overruled the evidentiary standard established in *Swain*, is to be given prospective application only to cases where the jury selection occurred after the *Batson* decision was rendered. *Id.*

> In *Swain*, the United States Supreme Court held that, in light of the purposes and functions of peremptory challenges, the Constitution did not mandate an examination of the prosecutor's reasons for exercising the challenges in any particular case. Instead, the presumption in any given case was that the prosecution utilized its peremptory challenges to obtain a fair and impartial jury. The Supreme Court went on to say that in order for a defendant to prevail on a claim that the prosecutor had unconstitutionally excluded blacks from his jury, he was required to establish that the prosecutor had engaged in case after case in a pattern of systematic use of peremptory challenges to exclude blacks from the petit jury.

*Id.* at ---, 343 S.E. 2d at 820. Defendant has not met the *Swain* standard.

**[6]** Finally, defendant contends that he was prejudiced by ineffective assistance of counsel in violation of his rights as guaranteed by the Sixth Amendment to the United States Constitution and Article 1, §§ 19 and 23 of the North Carolina Constitution. We do not agree.

A defendant's right to counsel includes the right to the effective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985). The test for ineffective assistance of counsel is the same under both Constitutions. *Id.* When a defendant attacks his counsel on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674, 104 S.Ct. 2052 (1984). In order to meet this burden defendant must satisfy a two-part test.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. *This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.* (Emphasis added.)

*Strickland*, 466 U.S. at 687, 80 L.Ed. 2d at 693, quoted in *Braswell*, 312 N.C. at 562, 324 S.E. 2d at 248.

Upon the hearing of defendant's motion for appropriate relief, the court made extensive findings of fact. Based upon those findings of fact the court concluded that as a matter of law

> the pretrial and trial performance of Jerome Paul was significantly deficient and fell well below the minimum standard of professional competence expected and required of attorneys handling serious criminal cases in the Superior Courts of Wake County. The quality of Mr. Paul's representation was far below that standard of practice routinely engaged in by members of the Wake County Bar who practice criminal law in the Superior Court.

Wherefore, the defendant has met his first burden as required by *State v. Braswell, supra*, to establish marked deficiences [sic] in the performance of his trial defense attorney.

The court then proceeded to make the following FINDINGS OF FACT and CONCLUSIONS OF LAW as to any actual prejudice suffered by defendant.

FINDINGS OF FACT [ACTUAL PREJUDICE]

In order to prevail, the defendant must also establish that the deficiencies of his attorney were so substantial that they undermined the adversarial process to the extent that the jury verdict was unreliable. In essence, the defendant must show that he was prejudiced by these deficiencies and that absent such deficiences [sic] there is a reasonable probability that the result of the trial would have been different.

(1) This Court has carefully examined the testimony at this hearing and the testimony contained in the trial transcript. The defendant has failed to show how any witness's testimony would be different at a new trial or how any witness's testimony would have been different had the witness been interviewed and prepared by Attorney Paul or any attorney prior to the trial. The only additional witness not called by Attorney Paul at trial who is presently available to testify at a new trial is Ms. Underwood. She is employed by an agency of the court which makes investigations regarding pretrial release. She spoke to the victim after Mr. Moorman's arrest and was advised by [the prosecutrix] that she has no objection to Moorman's release on bond. [The prosecutrix] advised Underwood that she was not afraid of Moorman but that she did fear harassment from his friends.

Although this witness was not called by Attorney Paul, he did cross examine [the prosecutrix] regarding these statements and she admitted making them. Therefore, any testimony of Ms. Underwood would have been cumulative at best. Also, this testimony is not exculpatory of the defendant and fails to have any direct bearing upon the question of his guilt.

Wherefore, the Court finds as a fact that even though Attorney Paul was deficient in his investigation and his trial

performance, all witnesses with relevant evidence testified to the full extent of their knowledge at the defendant's trial. There is no new evidence or undeveloped evidence which was not presented. The defendant has even failed to explain how his own testimony would have been different.

The Court also finds that Attorney Paul's cross-examination of the victim, of the investigating police officers and of all crucial prosecution witnesses was thorough and aggressive. Although deficient in preparing and presenting his own case, Attorney Paul was not deficient in attacking the prosecution's case. The defendant has failed to show any area of cross-examination or impeachment which was neglected by Attorney Paul. The Court finds that the defendant has failed to show any prejudice resulting from Attorney Paul's performance attacking the prosecution's case. The defendant has failed to show any additional evidence that should have been developed in that regard which was not developed and explored.

(2) The Court finds that the jury verdicts were based upon a determination by the jury that [the prosecutrix] testified truthfully and that Percy Moorman did not. After carefully examining the testimony of these two people it is not difficult to determine how the jury reached that conclusion. Although [the prosecutrix's] testimony of these events could be characterized as unusual, the testimony of the defendant was simply not credible. [The prosecutrix's] testimony was corroborated by evidence of physical injuries to her neck and rectum consistent with an assault. Based upon the evidence reflected in the trial transcript, this Court cannot say that absent all deficiencies by Attorney Paul there is a reasonable possibility or probability that the jury verdict would have been different. Even in the absence of the errors by counsel discussed above, there is no likely possibility that the factfinders would have had a reasonable doubt as to the defendant's guilt.

The Court finds that jurors honor and carefully follow the instructions that require that they ultimately base their decisions on the true facts and upon the law. Sometimes they do this with the aid of counsel; sometimes they do this in

spite of counsel. The Court is satisfied that the jury in this case returned a verdict based upon the law and the evidence without regard to and unaffected by the conduct of Attorney Paul.

### CONCLUSIONS OF LAW [ACTUAL PREJUDICE]

Based upon the foregoing findings of fact, the Court concludes as a matter of law that the defendant has failed to show that he was in any manner prejudiced by the deficiencies of his attorney at trial or that there is a reasonable probability or possibility that in the absence of these deficiencies the jury would have had a reasonable doubt of his guilt. The defendant has failed to show that his attorney's conduct adversely affected the jury verdict to the extent that the defendant's trial cannot be relied on as having produced a just result.

The court therefore denied defendant's motion for appropriate relief based on ineffective assistance of counsel.

In reviewing an order entered on a motion for appropriate relief, the findings of fact made by the trial court are binding upon an appellate court if they are supported by evidence, even though the evidence is conflicting. *State v. Stevens*, 305 N.C. 712, 291 S.E. 2d 585 (1982). Our inquiry as an appellate court is to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the hearing court. *Id.*

We have reviewed the evidence and find that the court's findings of fact are supported by evidence in the record, and that the facts support the conclusions of law. We agree with the court's conclusions based upon the facts as found and, moreover, conclude that any errors by counsel were not so serious as to deprive defendant of a fair trial. The order denying defendant's motion for appropriate relief is supported by the findings of fact and conclusions of law and should be upheld.

The result in the case is as follows:

84CRS61128 — judgment arrested.

84CRS61127 and 84CRS66019—no error.

Judges WELLS and PARKER concur.