STATE OF NORTH CAROLINA v. TIMOTHY OBER THOMPSON
AKA TENNIS THOMPSON

No. COA99-687

(Filed 1 August 2000)

**1. Evidence— child sexual abuse—prior acts against victim— common plan or ongoing scheme—remoteness**

The trial court did not err in a prosecution for first-degree statutory rape, taking indecent liberties, and other offenses by admitting alleged sexual acts committed against the victim 7 and 2 years before the first offense in this action. The evidence was admissible to show a common plan or ongoing scheme whereby defendant would wait until the victim's mother was gone, send the siblings upstairs, and perform sexual acts against the victim. The acts were not too remote in time in that the evidence reflected a continuous pattern from the time the victim was 5 until the offenses alleged in this action; a five-year gap in continuity occurred because defendant had no opportunity to be alone with the victim during this time, not because the common plan or scheme had ceased.

**2. Evidence— child sexual abuse—physical abuse of siblings and pet—victim's state of mind**

The trial court did not err in a prosecution for first-degree statutory rape, indecent liberties, and other offenses by admitting

---

1. This order of attachment was subsequently dissolved.

evidence of defendant's prior physical abuse of the victim's siblings and the family cat, but only because the abuse was in the victim's presence and defendant specifically made her state of mind relevant. Evidence of physical abuse or abuse of animals in cases involving only sexual abuse should be scrutinized carefully by the trial judge.

**3. Discovery— exculpatory evidence not disclosed—DSS and medical records—in camera review by trial court**

The trial court did not violate *Brady v. Maryland*, 373 U.S. 83, in a prosecution for first-degree statutory rape, indecent liberties, and other offenses by failing to require the State to disclose to defendant DSS and medical records as exculpatory evidence where the trial court followed procedural mandates for in camera review and sealing the DSS records, the only potentially exculpatory information in those records had already been introduced, and, with respect to the medical records, defendant did not show a substantial basis for claiming materiality so as to warrant an in camera review. Asking a defendant to affirmatively establish that a piece of evidence not in his possession is material might be a circular impossibility, but a substantial basis for believing such evidence is material is required to prevent unwarranted fishing expeditions.

**4. Criminal Law— judge's comments—trial not rushed**

A defendant in a prosecution for first-degree statutory rape, indecent liberties, and other offenses was not deprived of a fair trial by the judge rushing the proceedings where the prosecutor had a personal commitment on the following Monday and any effort to finish the trial by Friday was to accommodate her, defense counsel agreed that the trial would finish by then, and the trial judge emphasized to both defendant and the jury on at least two occasions that the Friday deadline was not rigid and set in stone.

**5. Evidence— recross examination denied—reading previously admitted evidence**

The trial court did not err in a prosecution for first-degree statutory rape, indecent liberties, and other offenses by not permitting defendant to cross-examine the victim a second time after she read on redirect a story she had written for her therapist about her abuse where the story had been admitted during the initial direct examination and defense counsel had cross-examined

her about the story. Simply having her read the evidence on re-direct did not elicit new matter.

**6. Evidence— rape shield statute—medical DSS records—sexual act involved in offense—accusations**

There was no prejudicial error in a prosecution for first-degree statutory rape, indecent liberties, and other offenses where the trial court erroneously invoked the rape shield statute to prevent defendant from introducing the victim's medical records, which indicated that defendant's "partner" had been treated for gonorrhea, and to prevent defendant from questioning whether the victim's DSS records included any accusations of people other than defendant or false accusations. The medical records concerned the direct sexual act for which defendant was on trial, not some other act in defendant's history, and the line of questioning about the DSS records dealt with accusations, not sexual activity, so that Rule 412 did not operate as a shield; however, the questions were irrelevant because the medical records did not identify the "partner" and it was obvious that the victim had a sexual connection, and no evidence at trial suggested that she had ever made false accusations.

**7. Sentencing— consecutive sentences—findings not required**

The trial court did not err when sentencing defendant for first-degree statutory rape, indecent liberties, and other offenses by imposing consecutive sentences without findings as to why he was using consecutive sentences. The imposition of consecutive sentences is neither violative of the Eight Amendment nor the state's Fair Sentencing Act, and there was no abuse of the court's discretion in light of the sheer brutality of the sexual acts committed here. Changing the statutes to require findings would be a question for the legislature.

Appeal by defendant from judgments entered 2 March 1998 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 8 May 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General, Sylvia Thibaut, for the State.*

*Eagan & Eagan, by Thomas H. Eagan, for defendant-appellant.*

LEWIS, Judge.

Defendant was tried at the 23 February 1998 session of Durham County Superior Court on two counts of first-degree statutory rape, one count of statutory rape of a person fourteen years of age, one count of first-degree statutory sex offense, and three counts of taking indecent liberties with a minor. The alleged offenses occurred in December 1993, January 1994, and February 1996. The jury returned a verdict of guilty as to all charges, and defendant now appeals.

At trial, the State presented several witnesses who testified defendant sexually abused N beginning when she was five years old. N herself specifically testified that defendant sometimes forced her to perform fellatio upon him up to three times a week. At that time, defendant was living in the same household with N, N's mother, and N's siblings. Sometime shortly thereafter, N moved to live with defendant's mother. When N was ten years old, she moved back in with her mother, her siblings, and defendant. N testified that, upon her moving back, defendant immediately began physically abusing her; his sexual abuse of her resumed a few months later. Other witnesses for the State testified defendant beat N with boxing gloves, twisted and broke her arm, fractured her ribs, put a knife to her throat, put a gun to her head, and even threatened to kill her. When the Department of Social Services initially investigated, N did not report defendant for fear of being beaten.

The State's evidence further established that, in December of 1993, when N was twelve years old, defendant showed her a pornographic video, assaulted her with a dildo, and then engaged in intercourse with her. Defendant and N again had intercourse in January of 1994. N ran away from home in February of 1996, but later got into defendant's cab, went to a hotel, and had intercourse with him, after which he gave her money. A Durham police officer located a receipt, introduced at trial, that indicated defendant and N had stayed at the hotel on 16 February 1996.

Several witnesses at trial, including N and one of her brothers, testified that defendant also physically abused N's siblings and the family cat. Specifically, the evidence showed that defendant hit the siblings with boxing gloves, forced them to fight each other with boxing gloves, beat one brother with a cane, burned the leg of another brother by igniting lighter fluid on it, and strangled and drowned the family cat. This abuse occurred in N's presence.

**STATE v. THOMPSON**

[139 N.C. App. 299 (2000)]

**[1]** In his first four assignments of error, defendant contends the trial court admitted improper evidence in violation of Rule 404(b). Specifically, he contests admission of the alleged sexual acts committed on N when she was five years old, some seven years before the first charged offense here, and sexual acts committed on N when she was ten years old, some two years before the first charged offense. Defendant also contests the evidentiary basis for admitting his alleged physical abuse of N's siblings and his alleged abuse of the family cat.

Our Supreme Court has clarified that Rule 404(b) is "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). We conclude the contested evidence here was admissible for purposes other than merely to show defendant's propensity to commit sex crimes of the type charged.

We begin with the evidence of defendant's prior sexual abuse of N. Our state is quite liberal with respect to the admission of evidence of other sex offenses when those offenses involve the same victim as the victim of the offense for which defendant is being charged. *State v. Miller*, 321 N.C. 445, 454, 364 S.E.2d 387, 392 (1988). Here, we hold that the evidence was admissible to show a common plan or ongoing scheme by defendant of sexually abusing N.

"When evidence of the defendant's prior sex offenses is offered for the proper purpose of showing plan, scheme, system, or design . . . the 'ultimate test' for admissibility has two parts: First, whether the incidents are sufficiently similar; and second, whether the incidents are too remote in time." *State v. Davis*, 101 N.C. App. 12, 18-19, 398 S.E.2d 645, 649 (1990). As to the first part of that test, the evidence at trial demonstrated an ongoing pattern whereby defendant would wait until N's mother was gone, send N's siblings upstairs, and then proceed to perform sexual acts on N, or force her to perform sexual acts upon him. N even testified that she recognized this pattern:

Q: Did you have any sense or feeling, did you know before the sexual abuse would happen that it was about to happen?

A: Yes, I did.

Q: Was there a pattern or some signals?

A: Yes.

Q: What were the patterns or indications that would let you know that you were about to have to perform oral sex with him again?

A: Would send my mother away and if the children were downstairs he'd send them upstairs, vice versa.

(1 Tr. at 78-79.) *See also State v. Spaugh*, 321 N.C. 550, 556, 364 S.E.2d 368, 372 (1988) ("[T]he victim's testimony clearly tended to establish the relevant fact that the defendant took sexual advantage of the availability and susceptibility of his young victim at times when she was left in his care."); *State v. Arnold*, 314 N.C. 301, 305, 333 S.E.2d 34, 37 (1985) ("This testimony clearly tended to prove that the defendant engaged in a scheme whereby he took sexual advantage of the availability and susceptibility of his young nephews each time they were left in his custody."); *State v. Summers*, 92 N.C. App. 453, 460, 374 S.E.2d 631, 635 (1988) ("[The evidence] tends to establish a plan or scheme by defendant to sexually abuse the victim when the victim's mother went to work . . . .").

With regard to the second part of the test, defendant contends the alleged prior acts were too remote in time. We disagree. "When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan." *State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989). The evidence at trial reflects a continuous pattern of sexual abuse, beginning when N was five years old and continuing until the date of the alleged offenses here. Although there was a five-year gap in this continuity (from the time N was five years old until the time she was ten years old), the evidence at trial suggests this gap was not because defendant's common plan or scheme had ceased, but because he had no opportunity to be alone with N during this period of time. As this Court has previously stated, "When there is a period of time during which there is no evidence of sexual abuse, the lapse does not require exclusion of the evidence if the defendant did not have access to the victim[] during the lapse." *State v. Frazier*, 121 N.C. App. 1, 11, 464 S.E.2d 490, 495 (1995), *aff'd*, 344 N.C. 611, 476 S.E.2d 297 (1996). Once N moved back in with defendant, the pattern of sexual abuse upon her almost immediately resumed. Accordingly, we hold that the evidence of prior sexual abuse was not too remote in time as to warrant its exclusion. *See also State v. Riddick*, 316 N.C.

127, 134, 340 S.E.2d 422, 427 (1986) (allowing evidence despite six-year gap because the gap was due to defendant's incarceration); *State v. Jacobs*, 113 N.C. App. 605, 611-12, 439 S.E.2d 812, 815-16 (1994) (allowing evidence despite gap when the gap was due to defendant's lack of access to the victims); *State v. Davis*, 101 N.C. App. 12, 20, 398 S.E.2d 645, 650 (1990) (allowing evidence despite ten-and-a-half year gap because defendant spent most of this time in prison).

[2] We next consider whether the trial court improperly admitted the evidence of defendant's prior physical abuse of N's siblings and his physical violence against the cat. We again emphasize that "evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986). Significantly, although this alleged abuse was committed on N's siblings and pet (as opposed to N herself), it occurred *in N's presence.* N testified that she saw defendant beat her siblings several times with a cane and with boxing gloves. She also testified that defendant strangled and drowned their cat in her presence.

In sex abuse cases, the victim's state of mind can be relevant. *State v. Bynum*, 111 N.C. App. 845, 849, 433 S.E.2d 778, 780-81 (1993). When it is relevant, any evidence tending to show the victim is afraid of her abuser, or evidence explaining why the victim never reported the sexual incidents to anyone, is admissible. *Id.* at 849, 778 S.E.2d at 781; *State v. Barnes*, 77 N.C. App. 212, 216, 334 S.E.2d 456, 458 (1985). At trial, defendant relied heavily on N's failure to report the sexual abuse in suggesting that such abuse never in fact occurred. By bringing forth this defense, defendant thereby specifically made N's state of mind relevant. The State could therefore introduce any evidence tending to explain N's state of mind. The evidence of physical abuse and animal abuse here did just that: it tended to explain N's fear of defendant and why she never reported all the incidents of sexual abuse. N even specifically testified that she never reported the sexual abuse because, in light of all the other abuse that she witnessed, she knew he would beat her if she did report it.

We do express caution with a trial court's admitting evidence of animal abuse and/or physical abuse in cases only involving sex abuse. Such evidence must be relevant, and being lewd and despicable does not necessarily make it relevant. Furthermore, such evidence has the potential of being highly prejudicial to a defendant and thus should be scrutinized carefully by the trial judge. We emphasize that the *only* reason the evidence is admissible here is because the physical and

STATE v. THOMPSON

[139 N.C. App. 299 (2000)]

animal abuse was done in N's presence and because defendant specifically made N's state of mind relevant. To the extent evidence of physical and/or animal abuse not done in N's presence was admitted, such admission was error, but would not have changed the outcome so as to require a new trial. We therefore reject defendant's first argument.

[3] In his next assignment of error, defendant claims the State failed to turn over certain exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). In particular, he points to a portion of N's medical records and her Department of Social Service ("DSS") records. We find no error.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87, 10 L. Ed. 2d at 218. Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *U.S. v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985). When a defendant makes a specific request for certain evidence that is material and exculpatory, the trial judge must perform an *in camera* inspection of this evidence to determine whether it in fact should be turned over to the defendant. *State v. Hardy*, 293 N.C. 105, 127-28, 235 S.E.2d 828, 842 (1977). If the trial judge rules against defendant after making this inspection, he should then seal the evidence so it can be placed in the record for appellate review. *Id.* at 128, 235 S.E.2d at 842.

Here, the trial judge viewed N's DSS records *in camera* and concluded they contained no exculpatory evidence that was material to defendant at trial. He then sealed these records for our appellate review. He thus complied with the procedural mandates of *Hardy*. We have reviewed the DSS records ourselves and agree with the trial judge. The only potentially exculpatory information contained in the records involves N's mother's denial that her children were being abused by defendant and N's own initial denial that she was being abused by him. As evidence of these denials was already introduced by defendant at trial, the DSS records contained no "new" material evidence that warranted their being turned over to defendant.

With respect to N's medical records, however, the trial judge never performed an *in camera* inspection nor sealed the records for

**STATE v. THOMPSON**

[139 N.C. App. 299 (2000)]

appellate review. But just because defendant asks for an *in camera* inspection does not automatically entitle him to one. Defendant still must demonstrate that the evidence sought to be disclosed might be material and favorable to his defense. *See State v. Phillips*, 328 N.C. 1, 18, 399 S.E.2d 293, 301 (1991) ("A judge is required to order an *in camera* inspection and make findings of fact concerning the evidence at issue only if there is a possibility that such evidence might be material to guilt or punishment and favorable to the defense."); *see also U.S. v. Agurs*, 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351 (1976) (stating that an *in camera* inspection is required if the evidence is material, or "if a substantial basis for claiming materiality exists"). Thus, although asking defendant to affirmatively establish that a piece of evidence not in his possession is material might be a circular impossibility, we at least require him to have a substantial basis for believing such evidence is material. Otherwise, defendant would be able to waste the time and resources of our judicial system by forcing unwarranted fishing expeditions. Here, in referring to the medical records sought, defense counsel admitted to the trial judge, "[W]e are not specifically aware of any basis to say that there is exculpatory information there." (1 Tr. at 10.) Given this admission, defendant has not shown a substantial basis for claiming materiality so as to warrant *in camera* review of N's medical records.

**[4]** Next, defendant argues he was deprived of his right to a fair trial because the judge unnecessarily rushed the proceedings. "Court proceedings should not be hurried in such a manner as to deprive a litigant of his rights, but the court should see that the public time is not uselessly consumed." *State v. Davis*, 294 N.C. 397, 402, 241 S.E.2d 656, 659 (1978). Here, defendant points to three remarks made by the trial judge allegedly illustrating his intent to finish the trial by Friday of the first week at all costs. First, immediately after the jury was empaneled, the judge stated, "I'm going to try to get this case done by Friday. I don't know if I can, do the best I can." (1 Tr. at 49.) Second, the following dialogue occurred between the trial judge and the alternate juror regarding being able to finish by Friday:

JUROR: With all due respect my concern is if we're all planning our Fridays I'm not sure that the defendant is going to get a fair discussion and that concerns me.

COURT: He will. He will. That's what my job is.

JUROR: I'm concerned we're all planning Friday out. That just concerns me.

COURT: Believe me, [defendant] was the first person I talked to. Somebody else have a concern?

(No response.)

(2 Tr. at 52-53.) Third, during the charge conference (and thus outside the presence of the jury), the trial judge stated, "I want a reason why we're doing it [giving the jury a certain instruction]. We've got to finish this trial sometime today. I got to go through and pull all these instructions and put them together." (3 Tr. at 66).

We do not believe the above comments illustrate any intent on the part of the trial judge to unfairly rush through defendant's trial. The prosecutor had a personal commitment on the following Monday; any effort to finish the trial by that Friday were seemingly to accommodate her. Defense counsel even agreed that the trial would finish by then. More important, however, the trial judge emphasized to both defendant and the jury on at least two occasions that the Friday deadline was not rigid and set in stone, but would depend on several factors. We therefore conclude that the trial judge did not act inappropriately in his time management of the trial.

[5] Defendant also contends the trial court erred by refusing to allow him to cross-examine N a second time. On re-direct, N read to the jury "My Nightmare," a story she wrote for her therapist that recounted the sexual abuse she had experienced. Defendant then sought to re-cross-examine N about some particulars of this story. The trial court denied defendant's request.

Once a witness has been cross-examined and reexamined, counsel does not have the right to a second cross-examination unless the re-direct examination brings forth new matter. *State v. Moorman*, 82 N.C. App. 594, 600, 347 S.E.2d 857, 860 (1986). Here, although "My Nightmare" was not actually read by N until re-direct, it was introduced by the State into evidence during N's initial direct examination. By simply having her read already-admitted evidence on re-direct, the State thus did not elicit any "new matter." When no new matters have been introduced, allowance for any re-cross-examination is left to the sound discretion of the trial court. *Id.* Here, defense counsel had the opportunity to, and did in fact, cross-examine N about several things in her story, as well as certain things noticeably absent from it. By refusing to allow a second such cross-examination, we cannot say the trial court abused its discretion.

**[6]** Next, defendant claims the trial court erred by invoking the rape shield statute to prevent him from attacking N's credibility. N testified that defendant gave her gonorrhea through unprotected sex. On cross-examination, defendant sought to introduce certain medical records of N that stated her "partner" had been treated for gonorrhea as well. Defendant tried to use these records to suggest N's "partner" was someone other than defendant. The trial court refused this request, concluding that the records were inadmissible under Rule 412. Defendant also tried to question Willie Gibson, a DSS social worker, as to whether N's DSS records included any accusations by her of people other than defendant abusing her, or included any accusations that turned out to be false. The trial court prohibited this line of questioning as well, again invoking Rule 412.

The rape shield statute, codified in Rule 412 of our Rules of Evidence, is only concerned with the *sexual activity* of the complainant. *State v. Guthrie*, 110 N.C. App. 91, 93, 428 S.E.2d 853, 854 (1993). Accordingly, the rule only excludes evidence of the actual sexual history of the complainant; it does not apply to false accusations, *State v. McCarroll*, 109 N.C. App. 574, 578, 428 S.E.2d 229, 231 (1993), or to language or conversations whose topic might be sexual behavior, *State v. Durham*, 74 N.C. App. 159, 167, 327 S.E.2d 920, 926 (1985). Furthermore, the sexual activity contemplated by the rule is that activity of the victim "other than the sexual act which is at issue in the indictment on trial." N.C.R. Evid. 412(a). Neither of the lines of questioning sought by defendant involved the type of "sexual activity" governed by Rule 412. The medical records of N's gonorrhea related to the exact sexual act for which defendant was on trial. Throughout, defendant has maintained that the sexual acts, if any, committed on N (and the resultant gonorrhea) were done by someone else. Accordingly, the medical records concerned the direct sexual act for which defendant was on trial, not some other act in N's sexual history. And the line of questioning with respect to the DSS records only dealt with accusations—not actual sexual activity. Accordingly, Rule 412 did not operate as a shield to these questions.

But just because Rule 412 is inapplicable does not mean defendant may examine or cross-examine at will. His questioning still must be relevant for the purpose for which it was offered, i.e. to impeach N's credibility. *See id.* at 167, 327 S.E.2d at 926 ("While we agree that in the present case the child's accusation of her father, to the extent it is evidence of conversation or language, is not excluded by the Rape Shield Statute, we still face the problem of whether this accu-

sation is relevant to the child's credibility."). We find no such relevance here. The reference to "partner" in the medical records did not contribute anything to defendant's case: it did not contradict anything testified to by N, nor did it suggest anything else that could be used to impeach her. The medical records simply stated that N's "partner" had gonorrhea and nothing more. It was apparent that N had a sexual connection and therefore a "partner"; but said partner was not identified in the records.

The questions regarding N's DSS records were equally irrelevant. No evidence at trial was introduced to suggest that N had ever made any false accusations, and defendant's proffer of evidence here made no such showing either. Essentially, defendant was on a fishing expedition. Absent some definitive evidence that N had previously made false accusations, we cannot say the trial court committed prejudicial error by preventing this line of questioning. *See generally State v. Anthony*, 89 N.C. App. 93, 96-97, 365 S.E.2d 195, 197 (1988) (distinguishing cases that allowed evidence of prior accusations with the present case because those cases involved actual evidence suggesting the accusations were false, whereas the present case did not).

[7] Finally, defendant asserts error in his sentence. Following his conviction, the trial court sentenced defendant to three life sentences plus a term of 288-355 months, all to be served consecutively. The judge made no findings as to why he was ordering consecutive, as opposed to concurrent, sentences. Defendant contends the imposition of consecutive sentences here was unwarranted. We disagree.

The imposition of consecutive sentences is neither violative of the Eighth Amendment, *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983), nor of our state's Fair Sentencing Act, *State v. Barts*, 316 N.C. 666, 697, 343 S.E.2d 828, 847 (1986). In fact, our legislature has vested the trial judge with broad discretion in deciding whether multiple sentences should be served consecutively or concurrently. N.C. Gen. Stat. § 15A-1354(a) (1999). In light of the sheer brutality of the sexual acts committed here, we find no abuse of that discretion.

Nonetheless, defendant contends that our statutes give the trial judge too much discretion and should at least require the judge to make specific findings with respect to the issue of consecutive or concurrent sentences. We respond to defendant's argument the same way we responded to a similar argument recently made to this Court: "This is, at best, a question for the legislature to resolve, but for our

purposes it is an argument without merit on appeal." *State v. Love,* 131 N.C. App. 350, 359, 507 S.E.2d 577, 584 (1998).

No error.

Chief Judge EAGLES and Judge EDMUNDS concur.