STATE OF NORTH CAROLINA v. LEON KEITH GRAY

No. 8112SC1282

(Filed 6 July 1982)

1. **Larceny § 7.6— removal of tires from car—sufficient evidence of taking and asportation**

   Evidence that defendant removed tires and wheels from cars belonging to a car dealer at least a fraction of an inch was sufficient evidence of a taking and asportation to support a conviction of larceny.

2. **Larceny § 8— felonious larceny—failure to submit issue of attempted larceny**

   The trial court in a prosecution for felonious larceny of automobile tires did not err in refusing to instruct the jury on attempted larceny where all the evidence tended to show that defendant was guilty of larceny in that he removed tires from automobiles completely and propped them against the hubs.

APPEAL by defendant from *Clark, Judge.* Judgement entered 4 June 1981 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 7 May 1982.

Defendant appeals from a judgment of imprisonment entered upon his conviction of felonious larceny.

*Attorney General Edmisten, by Associate Attorney Thomas J. Ziko, for the State.*

*Adam Stein, Appellate Defender, by Marc D. Towler, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Judge.

Defendant was indicted for the larceny of four tires. Evidence for the State, in pertinent part, tended to show the following:

Kyle Powers, nephew of C. C. Powers, President of Powers-Swain Chevrolet, Inc., met his uncle at the dealership on 1 March 1981 to discuss a job. When he arrived he saw two men on the lot beside two cars. One of the men drove out the front of the dealership, and the other drove out the back. Kyle identified defendant as the one who drove out the back.

When Kyle's uncle arrived, he told Kyle someone had been tampering with the cars on the lot. Kyle and his uncle then

walked over to two Monte Carlos. These cars "were sitting on bricks, and the two inside tires were gone." They also noticed an M-80 Malibu with "the lug nuts . . . gone and three bricks . . . laying up under the frame of the car."

Kyle and his uncle went to the garage area of the dealership to get a lug wrench to put the nuts back on. From there Kyle observed defendant walk up, get under the Malibu, and pull on the tires. Kyle's uncle called the Sheriff, and Kyle went out to talk with defendant. Defendant told him: "I just happened to notice the lug nuts were off and I was just crawling under there to see what was wrong." Defendant then "drove off in a hurry."

Kyle observed defendant's license plate number. He gave it to his uncle, who in turn relayed it to law enforcement officials.

Four tires and wheels had been removed from two Monte Carlos in the lot, and these cars were sitting on bricks. All the lug nuts were off the Malibu, and bricks were lying around it. The Malibu tires "sat on the side of the hub." The top hole and bolt had been moved "probably a half inch"; the bottom, three or four inches. The tire had actually been moved "about an inch or so."

When C. C. Powers first drove onto the lot, he noticed the two Monte Carlos parked side by side with the inside tires and wheels missing. He subsequently noticed the Malibu "with the lug nuts taken off, scattered over the ground." While he and Kyle were in the showroom he saw someone "sitting up a brick under the left front tire of [an] automobile." The person he saw took hold of two tires, broke them loose, and left the weight of the car "on the brick bat."

Powers then went to call the Sheriff. While he was calling he saw defendant drive out of the lot. He gave the Sheriff's office a description of defendant's car, its license number, and the direction in which it had gone.

Shortly thereafter three deputies returned with defendant. Defendant was wearing coveralls which were wet from the shoulders down. There was dirt and sand under the Malibu on the dealership lot. It had been raining, and the area under the Malibu was wet.

Powers estimated that the tires and wheels had been moved one inch from the axle of the Malibu. There was no weight on the wheels as they leaned against the hub.

Joe Herman, the Sheriff's Department employee who answered the call to stop defendant's car, also observed that the back of defendant's coveralls was wet and sandy. Kyle Powers and C. C. Powers both advised Herman when he brought defendant back to the dealership that defendant "was the one that they had seen . . . trying to remove their tires off of their . . . car there in the lot." Herman searched defendant's car and found some tools and "a half of brick . . . in the trunk." He observed "where the lug nuts had been taken off . . . and spewed around the tires" of the Malibu and that two tires were "completely off of the hub." He estimated the other two tires had been moved from the hub "approximately a quarter of an inch, an inch —." He observed bricks under the four wheels of the Malibu.

Mary Morrow, a crime scene technician with the Cumberland County Identification Bureau, also observed that the tires had been removed from the Malibu and "were leaning against the wheel area." She stated that the tires "were completely off and were leaning against the hub." She observed that defendant's car contained a lot of tools and that "[t]here were brick chips laying on the driver's side of the front seat floorboard." She also observed that bricks had been placed under the wheels of the two Monte Carlos and that the tires had been removed on the insides of both cars.

Morrow forwarded to the S.B.I. laboratory brick chips from defendant's car and bricks she received from Officer Herman. Herman had told her the bricks came from under the Malibu and one of the Monte Carlos on the dealership lot. A forensic chemist for the S.B.I. testified that one of the chips precisely fit into a "chipped away" place on a brick Morrow had received from Officer Herman.

Defendant offered no evidence.

[1] Defendant contends the court erred in denying his motions to dismiss, because the evidence was insufficient to establish the "taking and carrying away" of the property of another required to constitute the crime of larceny. On the authority of *State v.*

*Carswell*, 296 N.C. 101, 249 S.E. 2d 427 (1978), we find the evidence sufficient to take the larceny charge to the jury.

In *Carswell* some rooms in a motel were broken into. In one of the rooms the window air conditioner was pried away from the base on which it rested, but was not removed. The following night a motel security guard observed defendant Carswell and another man enter that room, take the air conditioner from its stand, and place it on the floor. The unit was moved approximately four to six inches toward the door. The men then left that room and were stopped by the security guard as they appeared to be entering another room.

Our Supreme Court held that evidence sufficient to take a larceny charge to the jury. It stated: "A bare removal from the place in which he found the goods, though the thief does not quite make off with them, is a sufficient asportation, or carrying away." *Carswell*, 296 N.C. at 103, 249 S.E. 2d at 428, *quoting from* 4 W. Blackstone, *Commentaries* 231. Further, "the accused must not only move the goods, but he must also have them in his possession, or under his control, *even if only for an instant.*" *Carswell*, 296 N.C. at 104, 249 S.E. 2d at 429 (emphasis supplied). The Court held that ,the act of picking up the air conditioner and placing it on the floor "was sufficient to put the object briefly under the control of the defendant, severed from the owner's possession." *Id.*

In ruling on the motion to dismiss the evidence must be considered in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *State v. Holton*, 284 N.C. 391, 394, 200 S.E. 2d 612, 614 (1973); *State v. Henderson*, 276 N.C. 430, 438, 173 S.E. 2d 291, 296 (1970). So considered, the evidence here permitted a finding that defendant removed tires and wheels from cars belonging to  Powers-Swain Chevrolet, Inc. at least a fraction of an inch from their axles. His act in so doing was sufficient to permit a finding that he placed the tires under his control, severed from the owner's possession, "even if only for an instant." *Carswell*, 296 N.C. at 104, 249 S.E. 2d at 429. Judged by the *Carswell* standard, such evidence was sufficient to take the larceny charge to the jury. *See also State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Speller*, 44 N.C. App. 59, 259 S.E. 2d 784 (1979).

[2] Defendant further contends the court erred in refusing his request to instruct the jury on attempted larceny. We find no error.

A defendant may be convicted of the crime charged in the bill of indictment, or, *inter alia*, of an attempt to commit it. G.S. 15-170 (1978). "The two elements of an attempt to commit a crime are: (1) An intent to commit it, and (2) an overt act done for that purpose, going beyond mere preparation, *but falling short of the completed offense.*" *State v. Powell*, 277 N.C. 672, 678, 178 S.E. 2d 417, 421 (1971) (emphasis supplied). *See also State v. Sanders*, 280 N.C. 81, 185 S.E. 2d 158 (1971); *State v. McNeely*, 244 N.C. 737, 94 S.E. 2d 853 (1956); *State v. Surles*, 230 N.C. 272, 52 S.E. 2d 880 (1949); *State v. Hoover*, 14 N.C. App. 154, 187 S.E. 2d 453, *cert. denied*, 281 N.C. 316, 188 S.E. 2d 899 (1972). "Where there is evidence of defendant's guilt of a lesser degree of the crime set forth in the bill of indictment, defendant is entitled to have the question submitted to the jury even in the absence of a specific prayer for the instruction." *State v. Green*, 298 N.C. 793, 797, 259 S.E. 2d 904, 907 (1979). "However, it is not necessary to submit the lesser included offense if the evidence discloses no conflicting evidence relating to the essential elements of the greater crime." *State v. Brown*, 300 N.C. 41, 50, 265 S.E. 2d 191, 197 (1980).

> The trial court is required to submit lesser included degrees of the crime charged in the indictment when and only when there is evidence of guilt of the lesser degrees. [Citations omitted.] The presence of such evidence is the determinative factor. [Citation omitted.] Where all the evidence tends to show that the crime charged in the indictment was committed, and there is no evidence tending to show the commission of a crime of lesser degree, the principle does not apply and it would be erroneous for the court to charge on the unsupported lesser degree.

*State v. Simpson*, 299 N.C. 377, 381, 261 S.E. 2d 661, 663 (1980).

The record here contains no evidence tending to show that defendant may have been guilty only of attempted larceny. All the evidence showed that defendant had removed the tires completely and propped them against the hubs. He thus had placed them under his control, severed from the owner's possession, for at least an instant. This was sufficient, under the *Carswell* stand-

ard, *supra*, to complete the offense of larceny. Defendant's acts thus did not "fall short of the completed offense," *Powell*, *supra*; and there was no evidence tending to show the commission of a crime of lesser degree than that charged, *Simpson*, *supra*. Consequently, the court properly declined to instruct on attempted larceny.

We find in defendant's contentions relating to the court's evidentiary rulings and instructions no error warranting a new trial.

No error.

Judges WEBB and WELLS concur.