STATE OF NORTH CAROLINA v. HATEM HAMAD AND DONALD CLAY WELLS

No. 883SC277

(Filed 20 December 1988)

**1. Criminal Law § 88.5— joint trial—recross-examination denied—error**
    The trial court erred in a prosecution for trafficking in cocaine and conspiracy to traffic in cocaine by sustaining defendant Wells' objection to further cross-examination by defendant Hamad where Wells testified, was initially cross-examined by Hamad's counsel, was further cross-examined by the State, and defendant Hamad's counsel was not then allowed to recross-examine defendant Wells. The State's cross-examination elicited testimony concerning several new matters which were not broached in Hamad's initial cross-

State v. Hamad

examination and the trial court's decision to permit or refuse Hamad's counsel to recross-examine defendant Wells was not discretionary.

**2. Narcotics § 4.5— trafficking in cocaine involving more than 400 grams—instructions on 200 to 400 grams—no prejudice**

There was no prejudice in a prosecution for trafficking in cocaine and conspiracy to traffic in cocaine involving more than 400 grams from the trial court's instruction that defendant Wells could be found guilty based on more than 200 but less than 400 grams.

**3. Criminal Law § 138.37— mitigating factors—assistance to law enforcement officers—timeliness of assistance**

The trial court erred when sentencing a defendant for multiple counts of trafficking in cocaine and conspiracy by refusing to consider whether defendant had rendered substantial assistance to law enforcement officers in accordance with N.C.G.S. § 90-95(h)(5) based on testimony from defendant at trial which implicated his codefendant. The trial judge did not exercise his discretion, erroneously ruling as a matter of law that defendant's trial testimony would not be considered based partly on the timeliness of the assistance provided.

Chief Judge HEDRICK dissents.

APPEAL by defendants from *Watts, Thomas S., Judge.* Judgments entered 5 June 1987 in Superior Court, PITT County. Heard in the Court of Appeals 24 October 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John F. Maddrey, for the State.*

*A. Wayne Harrison and James M. Roberts for defendant-appellant Hatem Hamad.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Gordon Widenhouse, for defendant-appellant Donald Clay Wells.*

JOHNSON, Judge.

Defendants present separate questions for review by this appeal. Hatem Hamad appeals from his convictions of trafficking in cocaine by possession of more than 200 but less than 400 grams, conspiracy to traffic in cocaine by possession of more than 200 but less than 400 grams, and conspiracy to traffic in cocaine by the sale of more than 200 but less than 400 grams, for which he was sentenced to consecutive terms of imprisonment totalling thirty-four years.

Donald Clay Wells appeals from convictions of identical offenses with the addition of a conviction for trafficking in cocaine by the *sale* of more than 200 but less than 400 grams. For these convictions, he was sentenced to two consecutive fourteen-year terms on the trafficking charges, and a concurrent fourteen-year term for the conspiracy conviction. Judgment was arrested on the remaining conspiracy conviction.

The State's evidence tended to show that on 29 September 1986 its witness James Stuart Crandell met with defendant Wells in Raleigh and was informed that Wells had a large quantity of cocaine which he had obtained from a "Cuban connection" and would sell for $40,000 per kilo (1,000 grams). The two men had met around six to eight weeks before when defendant Wells delivered restaurant equipment to Crandell's place of employment and told him at that time that he could make a substantial amount of money purchasing and selling illegal drugs.

Crandell, who had been previously convicted of trafficking in cocaine and rendered substantial assistance to law enforcement officials in that investigation, then called the Drug Enforcement Agency (D.E.A.) in Wilmington on 29 September 1986 and informed an agent of his conversation with Wells. He also telephoned Special Agent Malcolm McLeod of the State Bureau of Investigation (S.B.I.) on 1 October 1986 and informed him of Wells' plans. Later on that day, Wells called Crandell and informed him that he had the cocaine and was ready to execute the deal. Crandell then returned to the S.B.I. office in Greenville, met Agent McLeod, called Wells from the office and arranged a meeting in Tarboro for the same afternoon. At this meeting Wells produced a sample of cocaine which Crandell turned over to Agent McLeod.

Still later that same day at around 7:00 p.m., Crandell and Wells met for a second time. During this meeting Wells agreed to take Crandell to his duplex apartment so he could see the cocaine. While there, and parked outside in his vehicle, Crandell was informed by Wells that his source would not allow him to bring out the cocaine until Crandell produced the money. Crandell then saw defendant Hamad for the first time when he allegedly stepped outside the apartment and informed Wells that he was wasting his time.

State v. Hamad

. On the following day, after several telephone conversations, Wells informed Crandell that he and his wife (referring to Rita Raynor, a friend) would meet him in Greenville to complete the deal. After informing Agent McLeod of the impending meeting, Crandell arrived at a parking lot wearing a concealed transmitter which allowed S.B.I. agents to hear the transaction. Wells arrived in a vehicle being driven by Rita Raynor, with defendant Hamad in the front passenger seat. Wells then got into Crandell's vehicle and was informed that Crandell had the money. Wells then got a brown sack from Hamad, who was still seated in the other vehicle, which contained a package wrapped in silver duct tape. Crandell then tested the cocaine, expressed his approval, and gave Wells the "flash" money which had been supplied by the authorities. Wells then threw the bag of money into his own car. The law enforcement agents who had the area under surveillance then moved in and arrested the participants, Wells, Hamad, and Rita Raynor, the driver.

Rita Raynor testified for the State and was not tried with defendants, although she was charged with the same offenses as defendant Wells. She denied any involvement in the drug transaction. Defendant Hamad testified in his own defense and denied participation in the crimes charged. Defendant Wells also testified in his own behalf and corroborated Crandell's testimony, but explained his participation in the crimes as the result of Crandell's ability to overcome his will which was somewhat weakened by his financial troubles.

## Hamad's Appeal

Defendant Hamad presents five questions for review. We find that only two of those issues merit discussion. Insofar as questions one through three are concerned, they are overruled.

[1] In his fourth Assignment of Error, defendant contends that the trial court committed reversible error by sustaining defendant Wells' objection to further cross-examination by defendant Hamad. Hamad argues that at trial when co-defendant Wells testified, after initial cross-examination by Hamad's counsel, and further cross-examination by the State, Hamad's counsel was not then allowed to recross defendant Wells regarding what he contends were new matters elicited by the State. The State argues,

on the other hand, that since Wells' trial counsel did not tender any questions on redirect, Hamad was therefore not entitled to recross-examine his co-defendant.

We find that the semantic designation of the examination of defendant Wells by the State as cross-examination and the absence of redirect examination by Wells' counsel should not operate to abridge defendant Hamad's constitutional right to confront witnesses against him. *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed. 2d 297, 93 S.Ct. 1038 (1973). This right necessarily encompasses the right to have a reasonable opportunity to face "accusers and witnesses with other testimony." *State v. Garner*, 203 N.C. 361, 166 S.E. 2d 180 (1932), *quoting* N.C. Const. of 1868, Art. I, sec. 11, recodified at Art. I, sec. 23 (1970).

*State v. Moorman*, 82 N.C. App. 594, 600, 347 S.E. 2d 857, 860 (1986), *rev. on other grounds*, 320 N.C. 387, 358 S.E. 2d 502 (1987), *citing* 1 Brandis on North Carolina Evidence sec. 36 (2d rev. ed. 1982), provides that "after a witness has been cross-examined and reexamined, *unless the redirect examination includes new matter*, it is in the discretion of the judge to permit or refuse a second cross-examination, and counsel cannot demand it as of right." (Emphasis added.) In stating this rule we note that although there was no redirect examination per se, the State's cross-examination elicited testimony concerning several new matters which were not broached in Hamad's initial cross-examination of defendant Wells. These matters include, but are not limited to, several statements which further incriminated defendant Hamad by specifically detailing his alleged participation in the crimes charged.

Wells testified on cross-examination by the State that Hamad carried one kilogram of cocaine in a black bag into Wells' house; that Hamad cut the sample of cocaine which Wells gave to Crandell; that Hamad carried the bag containing the cocaine back to his hotel after his first meeting with Crandell at the duplex apartment; that Hamad cut the rock of cocaine and weighed it after learning that they could sell one-half of the kilogram to Crandell; and that at the scene of the final transaction Hamad was communicating with Wells while Wells consummated the deal with Crandell.

We therefore hold that because these matters were new, the trial court's decision to permit or refuse Hamad's counsel to recross-examine defendant Wells was not discretionary. *Moorman, supra*; 1 Brandis, *supra*. The label attached to the State's examination of defendant Wells is of no importance here because this case involves multiple defendants who could be subjected to two sets of cross-examination; and although the State's inquiry of defendant Wells was labelled cross-examination, it had the same practical import of a redirect examination. Defendant Hamad is therefore entitled to a new trial.

Having determined that the commission of error as to assignment of error number four entitles defendant Hamad to a new trial, we find it unnecessary to review his remaining question.

## Wells' Appeal

[2] Defendant Wells presents four questions, two of which merit discussion. Questions one and two are overruled.

By his third Assignment of Error, defendant argues that the trial court erred in overruling his objection to the jury instruction on a lesser included conspiracy offense which he claims was unsupported by the evidence. He contends that the indictment charged him with two conspiracies involving the "possession with intent to sell and deliver" and the "sale and delivery" of in excess of 400 grams of cocaine, and the trial court erroneously instructed the jury that he could be found guilty of conspiracies for trafficking in over 200 but less than 400 grams of cocaine.

We answer that although it was erroneous for the trial court to instruct on the unsupported lesser degrees, *State v. Gray*, 58 N.C. App. 102, 293 S.E. 2d 274, *disc. rev. denied*, 306 N.C. 746, 295 S.E. 2d 482 (1982), such error could not have been prejudicial. *State v. Chase*, 231 N.C. 589, 58 S.E. 2d 364 (1950). In *Chase*, the defendant was charged with robbery with firearms and was ultimately convicted of common law robbery. The Court, on appeal, conceded that the evidence only supported two possible verdicts: guilty of robbery with the use of firearms, or not guilty. However, the Court stated that "[i]t is an error prejudicial to the State, and not to him." *Chase* at 591, 58 S.E. 2d at 365, *quoting, State v. Quick*, 150 N.C. 820, 823-24, 64 S.E. 168, 170 (1909).

Similarly in *State v. Mitchell*, 48 N.C. App. 680, 270 S.E. 2d 117 (1980), this Court found no error in the trial of a defendant for armed robbery where the lesser included offense of common law robbery was submitted. The Court stated that

> [i]t is not necessary in this case to determine whether the trial court erred in submitting the lesser offense to the jury because such error, if any, is nonprejudicial. . . .

> Although defendant advances an ingenious argument in contending that submission of the lesser included offense prejudiced him by generating sympathy leading to a compromise verdict, we must agree with the overwhelming body of case law on this issue holding that such error is not harmful to defendant.

*Mitchell* at 684, 270 S.E. 2d at 119 (citations omitted). We therefore overrule the fourth question presented for review.

**[3]** In his final argument before the Court, defendant assigns error to the trial court's refusal to consider whether he had rendered substantial assistance to law enforcement authorities in accordance with G.S. sec. 90-95(h)(5).

During his sentencing hearing defendant requested a finding of substantial assistance based upon his testimony at trial which further implicated his co-defendant Hatem Hamad. The trial judge specifically stated that, to his knowledge, the provision did not allow the giving of testimony against a co-defendant at a joint trial to support a finding of substantial assistance. "It talks about that, but we certainly did not contemplate that the conviction — he didn't identify accomplices to the police officer; he didn't cause the arrest of the accomplices. It has to be conviction. And that certainly isn't contemplated by testimony in a joint trial."

G.S. sec. 90-95(h)(5) (1985) provides, in pertinent part, as follows:

> [T]he sentencing judge may reduce the fine, or impose a prison term less than the applicable minimum prison term provided by this subsection, or suspend the prison term imposed and place a person on probation when such person has, to the best of his knowledge, *provided substantial assistance in the identification, arrest, or conviction of any accomplices,*

*accessories, co-conspirators, or principals* if the sentencing judge enters in the record a finding that the person to be sentenced has rendered such substantial assistance.

Our reading of this statute, along with the thorough discussion on its probable legislative intent enunciated in *State v. Baldwin,* 66 N.C. App. 156, 310 S.E. 2d 780, *aff'd,* 310 N.C. 623, 313 S.E. 2d 159 (1984), leads us to a different conclusion than that reached by the trial judge. It is clear to us that the statute is designed to encourage those who have access to the networks involved in the drug "underworld" to reveal their superior knowledge and aid in the ultimate conviction of those involved in illegal drug trafficking.

The statute's clear language includes assistance leading to the conviction of any *co-conspirators.* It therefore is not unforeseeable that substantial assistance could include testimony rendered against a co-conspirator. An erroneous reliance upon the timeliness of the assistance provided appears to have been a motivational element in the trial court's refusal to hear evidence regarding the possible substantial assistance rendered in the case *sub judice,* as it was in *State v. Perkerol,* 77 N.C. App. 292, 335 S.E. 2d 60 (1985). In *Perkerol,* the trial court determined that defendant's offer of substantial assistance, tendered when he entered his plea of guilty, was untimely. This Court stated that "the statutory language 'has rendered such substantial assistance' commonsensically sets no time limit on when such assistance must be rendered." *Id.* at 300, 335 S.E. 2d at 65. Defendant's sentence in *Perkerol* was vacated and the matter was remanded for a new sentencing hearing.

We recognize that whether a trial court finds that a criminal defendant's "aid" amounts to "substantial assistance" is *discretionary.* G.S. sec. 90-95(h)(5). However, in this instance the trial judge did not exercise his discretion, but erroneously ruled as a matter of law that Wells' trial testimony would not be considered as evidence of substantial assistance.

### Result

It is for the foregoing reasons that we grant defendant Hatem Hamad a new trial, and defendant Donald Wells a new sentencing hearing.

New trial for defendant Hamad.

New sentencing hearing for defendant Wells.

Judge PARKER concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I disagree with the majority in awarding defendant Hamad a new trial based on the suggestion that the trial judge erred in not allowing Hamad's counsel to further cross-examine the co-defendant Wells. Hamad did not offer or request to cross-examine Wells for the record in the absence of the jury. Assuming *arguendo*, the trial judge erred in not allowing Hamad's counsel to cross-examine the witness, we cannot determine whether such error was prejudicial because nothing appears in the record from which we could determine whether such error was prejudicial. Furthermore, I am persuaded that any error in not allowing Hamad's counsel to cross-examine the co-defendant after the State had done so is harmless beyond a reasonable doubt. I vote to find no error as to defendant Hamad.

With respect to defendant Wells, I dissent from the part of the majority opinion awarding Wells a new sentencing hearing. In my opinion, the trial judge merely exercised his discretion in not finding the mitigating factor of "substantial assistance" as set forth in G.S. 90-95(h)(5).