IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-138

No. 395A21

Filed 16 December 2022

STATE OF NORTH CAROLINA

v.

KENNETH ANTON ROBINSON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 279 N.C. App. 643, 2021-NCCOA-533, dismissing defendant's appeal and by writ of certiorari finding no error in a judgment entered on 11 July 2019 by Judge Gregory R. Hayes in Superior Court, Guilford County. Heard in the Supreme Court on 19 September 2022.

*Joshua H. Stein, Attorney General, by Nicholas R. Sanders, Assistant Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Aaron Thomas Johnson, Assistant Appellate Defender, for defendant-appellant.*

MORGAN, Justice.

¶ 1   In this appeal, defendant Kenneth Anton Robinson brings forward an argument arising from a dissent in the Court of Appeals regarding the decision of the trial court to decline defendant's invitation to make a downward adjustment to defendant's sentence in light of the assistance provided by defendant to law enforcement entities regarding their criminal investigations. After reviewing the

plain language of the relevant sentencing statutes, the existing precedent of this Court, and the transcript of the sentencing hearing, we conclude that defendant has failed to demonstrate an abuse of discretion by the trial court in declining to reduce defendant's sentence due to defendant's rendition of substantial assistance. Accordingly, we affirm the decision of the Court of Appeals which found no error in defendant's sentencing.

## I.    Factual background and procedural history

¶ 2        This appeal arises from the parties' respective arguments which focus upon the content and the result of defendant's sentencing hearing; consequently, we present only an abbreviated account of the factual circumstances underlying the case. Defendant was arrested on 16 December 2016 following a search of defendant's home pursuant to a warrant issued upon, *inter alia*, information provided by a confidential informant. Defendant was subsequently indicted on 6 February 2017 on charges of (1) trafficking a controlled substance by possession of at least four grams but less than fourteen grams of heroin in violation of N.C.G.S. § 90-95(h)(4)(a) and (2) possession of a firearm by a felon in violation of N.C.G.S. § 14-415.1. Later, defendant was released from custody but was arrested again on 7 February 2018 and indicted on this date as well on a second charge of trafficking a controlled substance, which alleged possession of at least fourteen grams but less than twenty-eight grams of opium or heroin in violation of N.C.G.S. § 90-95(h)(4)(b). In April 2019, defendant

moved to suppress evidence obtained in a search which occurred in December 2016. The motion to suppress was denied, and defendant thereafter pled guilty on 9 July 2019 to all three pending charges pursuant to an agreement with the State.

¶ 3        Upon accepting defendant's pleas of guilty, the trial court also conducted the sentencing phase of the case on 9 July 2019. At sentencing, counsel for defendant contended that defendant had provided "substantial assistance" to law enforcement and that the trial court should employ its discretion provided by N.C.G.S. § 90-95(h)(5) to reduce the sentences otherwise required upon defendant's convictions for violations of N.C.G.S. § 90-95(h)(4). Defense counsel stated:

> Obviously, we are—we're asking for a lot, and there's a lot on the line for [defendant]. He understands that, and I think he's—he's earned the right to say to you, Your Honor, you know, we want a finding of substantial assistance, and we want a considerable reduction from what he is facing.
>
> Again, there's no hard-and-fast rules in terms of how we'll define substantial assistance or whether or not, you know, you have to work with every officer that's arrested you. You know, the statute just says if—the sentencing judge may reduce the fine or suspend the prison term imposed on the person and place the person on probation when the person has to the best of their knowledge provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, et cetera. And I would submit to the Court that we have that here.
>
> If Your Honor wants to look at the—you know, the first two busts that came from this information for the first case and then the last one from the last case, break it down

> however Your Honor is comfortable, I think clearly he has
> gone above and beyond in terms of comparing what he was
> charged with and what he's helped the officers to take off
> the street.

The State did not express a specific position regarding defendant's request for a downward adjustment in sentencing which was based upon his claim of the provision of substantial assistance. The trial court then permitted defendant to personally speak in open court regarding sentencing considerations.

¶ 4        In announcing its sentencing determinations, the trial court first observed that the two trafficking offenses to which defendant had pled guilty carried lengthy mandatory minimum sentences, could "easily run consecutive to each other which amounts up to a great deal of time" in light of defendant's heightened prior record level of Level IV, and required active sentences. The trial court then informed defendant that it was "bothered" by the repeat nature of defendant's drug-related criminal violations:

> THE COURT: . . . I hate to say—you know, I hate
> to—2014 looks like some kind of minor charges to me, but
> they are—they look like, you know, some minor drug
> charges from 2014.
>
> They popped you pretty good from the 2016 event,
> and it's clear that there's no doubt that you helped—that
> you offered—and even [a detective] says you offered
> substantial assistance for that event. But you didn't do it
> till later, and I think one of the things that's laying there
> in my mind is that you—why did you even take that—2018,
> that was a lot. The way I—I was trying to write down all
> those bundles and bricks. That's a lot. Right? I mean, I—

> when you kept talking about bundles and bricks, you're not talking about a little minor amount of heroin. That's a pretty major amount of heroin, right?
>
> [THE STATE]: It totaled up to approximately seventeen grams.
>
> THE COURT: Yeah. Yeah. But I mean, I kept hearing bundles and bricks, and I heard sums of money involved. And that was with these 2016 charges pending.

At this juncture in the sentencing phase, defendant explained to the trial court the reasons for his continued participation in the illegal drug trade despite previous convictions and pending charges.

¶ 5    The trial court then inquired about the previous plea agreement that defendant had been offered:

> THE COURT: Yeah. I think it's only fair—and, at this point, he mentioned—[defendant] mentioned something. Since I'm sitting here with a huge decision on this issue, what was the plea offer?
>
> [THE STATE]: Your Honor, he was offered two attempted traffickings [sic] and the G felony. So, basically, it's the exact same thing you have before you but taken out of the mandatory minimum. He was offered attempted trafficking for the E, attempted trafficking for the F, and the firearm by felon charge [a Class G felony].
>
> THE COURT: And then those would have been sentenced at?
>
> [THE STATE]: Level IV.
>
> THE COURT: So he was offered to go into the regular sentencing grid?

> [THE STATE]: That's correct.
>
> THE COURT: The regular E, F, and G sentencing grid?
>
> [THE STATE]: That's right.
>
> THE COURT: At a prior Record Level IV?
>
> [THE STATE]: That's correct. And any sort of consolidation, anything like that would have been up to the [c]ourt, if a judge would have chosen to consolidate any of it. And, of course, dismissal of all other pending charges.
>
> THE COURT: Yeah. Dismissal of all the other charges. And when was that offered?
>
> . . . .
>
> THE CLERK: It looked like January 31st, 2019, is when Judge Craig signed the order.
>
> THE COURT: Okay.

¶ 6    Ultimately, the trial court agreed with defense counsel that defendant had provided "substantial assistance" but declined the invitation to make a downward deviation from the applicable mandatory minimum sentences and instead elected to recognize defendant's assistance by consolidating, for sentencing purposes, not only the two trafficking by possession convictions, but also the possession of a firearm by a felon conviction. With respect to this development, the sentencing transcript shows the following:

THE COURT: . . . *There's no doubt in the [c]ourt's mind and based on everybody's testimony that he* deserves credit for substantial—[defendant] *deserves credit for substantial assistance that he provided* to [law enforcement] in the December 16, 2016, case. And he's— *the way that credit is going to be delivered is to, therefore— therefore, consolidate—consolidate all the cases into the February 7th, 2018, event* . . . . The trafficking by possession from December 16th, the possession of the firearm by felon from December 16th is all—they're all consolidated into the [2018 case].

. . . .

. . . So on that—that one—that one case, it's a Level II trafficking offense between fourteen and twenty-seven grams of heroin, a Class E felony. *Everything is consolidated into that one offense for—for a mandatory— there was no substantial assistance in that case—for the mandatory sentence in that one Class E offense of 90 to 120 months* in the Department of Corrections. . . .

. . . .

. . . I considered everything. You—*if I gave you consecutive sentences for your Class E, F, and G felonies, you were going to get close to this sentence of this mandatory minimum sentence anyway*. I think it's a—it's a tough sentence, but I go back. It's the chart—it's the sentence that the legislature of North Carolina said should be imposed for this type of offense, giving you credit— basically taking away—I mean, giving—I've consolidated everything with that—with that final offense, for that final number, which is set by statute.

THE DEFENDANT: Twelve to fifteen years?

[DEFENSE COUNSEL]: It's a little bit less than that.

> THE COURT: Yeah. It's 90 to 120 months. It is what it is, but it's what the legislature set forth as for the punishment for this—this type of case. I know. It's a very difficult sentence. *It's a difficult sentence to impose. But I don't get to—sometimes I just have to follow what the legislature says, and this is, I think, one of those times.*

(Emphases added).

¶ 7    In conformance with the statements which it made in open court, the trial court, in its judgment entered on 11 July 2019, consolidated the three felony convictions into one judgment and sentenced defendant to a single active sentence of 90 to 120 months as required under N.C.G.S. § 90-95(h)(4)(b) for the Class E felony of trafficking in opium or heroin by possession arising from the 7 February 2018 charge.

## II.    Appellate proceedings

¶ 8    Defendant filed a written Notice of Appeal on 17 July 2019, despite the fact that defendant's plea agreement had not indicated that he wished to retain his right to appeal the trial court's denial of defendant's motion to suppress.[1]

---

[1] While generally a defendant who pleads guilty to criminal charges may not appeal from the resulting conviction, N.C.G.S. § 15A-1444(a1) (2021), a trial court's order denying a motion to suppress evidence may be reviewed upon an appeal from a guilty plea. N.C.G.S. § 15A-979(b) (2021). However, this Court has held that a defendant who wishes to maintain a right to appeal from the denial of a motion to suppress despite pleading guilty after the denial of the motion must either include in the plea transcript a statement reserving the right to appeal the motion to suppress or orally advise the trial court and the prosecutor before the conclusion of plea negotiations that the defendant intends to appeal the denial of the motion to suppress. *State v. Reynolds*, 298 N.C. 380 (1979), *cert. denied*, 446 U.S. 941 (1980). Here, defendant gave no such notification or advisement in the plea agreement or during the plea process.

¶ 9        In light of this deficiency, defendant's appellate counsel filed a petition for writ of certiorari on 29 December 2020, acknowledging the jurisdictional flaws in defendant's notice of appeal and stating that appellate counsel had "extensively reviewed the trial record and the transcript in this case" but had "not located any meritorious issues to present" on appeal, citing *Anders v. California*, 386 U.S. 738, *reh'g denied*, 388 U.S. 924 (1967). Defendant's appellate counsel also filed a "no-merit" brief pursuant to *Anders* and *State v. Kinch*, 314 N.C. 99 (1985) in which defendant's appellate counsel stated that he had examined the record, statutes, and relevant cases, but was unable to identify any meritorious issues that could support a meaningful argument for relief on appeal. As is customary when an *Anders* brief is filed, appellate counsel for defendant asked the Court of Appeals to examine the record for possible prejudicial error which counsel might have overlooked.

¶ 10        After the Court of Appeals dismissed defendant's appeal due to defendant's failure to comply with N.C.G.S. § 15A-979, the lower appellate court opted to exercise its "discretion to grant defendant's petition for *writ of certiorari* and address the merits of defendant's appeal." *State v. Robinson*, 279 N.C. App. 643, 2021-NCCOA-533, ¶ 9. As to its acceptance of defendant's *Anders* brief, the Court of Appeals determined that defendant's appellate counsel "fully complied with *Anders* and *Kinch*." *Id.* ¶ 10. The lower appellate court then recognized the matters raised in the *Anders* brief and resolved them in the following manner:

> Defendant's appellate counsel submitted the following legal points: (1) whether the indictments were sufficient to confer jurisdiction upon the trial court; (2) whether the trial court erred in denying the motion to suppress; (3) whether there was a sufficient factual basis for the plea; and (4) whether the trial court erred in sentencing defendant. We agree with defendant's appellate counsel that it is frivolous to argue these issues.

*Id.* ¶ 11.

In deciding this case and concluding that no error was committed by the trial court, *id.* ¶ 1, the Court of Appeals majority determined that: (1) "the indictments against defendant were legally sufficient and conferred jurisdiction upon the trial court, as they gave defendant sufficient notice of the charges against him," *id.* ¶ 12; (2) "[t]here was competent evidence to support the trial court's denial of defendant's motion to suppress," *id.* ¶ 13; (3) "[t]he transcript reflects the factual basis for the plea was sufficient for each charge in the judgment," *id.* ¶ 14; and (4) "the trial court did not err in sentencing defendant to the mandatory minimum sentence pursuant to the structured sentencing chart," *id.* ¶ 15. The Court of Appeals dissent discerned "multiple issues of arguable merit—the application of [d]efendant's substantial assistance to sentence mitigation under N.C.G.S. § 90-95(h)(5), and whether law enforcement's execution of the search warrant violated the notice requirements of N.C.G.S. § 15A-249." *Id.* ¶ 18 (Murphy, J., dissenting). Thus, the dissent would have "remand[ed] for the appointment of new appellate counsel to provide briefing on these, and any other, issues of potential merit." *Id.*

¶ 12        On the basis of the dissent, defendant gave notice of appeal to this Court

pursuant to N.C.G.S. § 7A-30(2), contending that the Court of Appeals majority erred

in holding that this appeal involves no issue of arguable merit and claiming that the

trial court appeared to misunderstand the scope of its discretion to depart from the

prescribed statutory sentence as permitted by N.C.G.S. § 90-95(h)(5) due to the

performance of substantial assistance by defendant. Specifically, defendant argued

that the trial court had abused its discretion by acting under a misapprehension of

law, to wit: an erroneous belief that N.C.G.S. § 90-95(h)(5) only permits a trial court

to reduce the statutory mandatory minimum sentence for trafficking opium or heroin

where the trial court determines that the defendant has provided substantial

assistance to law enforcement *in the case for which the defendant is then being

sentenced.*

¶ 13        A careful review of the transcript of the sentencing hearing reveals no such

misunderstanding by the trial court. Therefore, this Court affirms the determination

of the Court of Appeals that the trial court did not abuse its discretion in sentencing

defendant.

## III.    Analysis

¶ 14        The General Assembly has enacted a scheme of statutes, commonly referred to

as the North Carolina Controlled Substances Act, which, *inter alia*, defines certain

drug-related acts which constitute violations of the state's criminal law and sets forth

the range of potential punishments for such violations which trial courts may impose. In the present case, defendant was charged with two counts of trafficking opium or heroin by possession—one under subsection 90-95(h)(4)(a) (concerning possession of at least four grams but less than fourteen grams of the controlled substances in question) and the other under subsection 90-95(h)(4)(b) (concerning possession of fourteen grams but less than twenty-eight grams of the controlled substances in question). N.C.G.S. § 90-95(h)(4) (2021). Each of those subsections identifies a minimum term and a maximum term for sentencing purposes. N.C.G.S. § 90-95(h)(4)(a), (b).

¶ 15    In addition to the detailed sentencing ranges presented in N.C.G.S. § 90-95(h)(4), the Legislature has provided an option for a trial court to depart from the specified sentences in certain circumstances:

> . . . . The sentencing judge *may* reduce the fine, or impose a prison term less than the applicable minimum prison term provided by this subsection, or suspend the prison term imposed and place a person on probation when such person has, to the best of the person's knowledge, provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals *if* the sentencing judge enters in the record a finding that the person to be sentenced has rendered such substantial assistance.

N.C.G.S. § 90-95(h)(5) (2021) (emphases added). The ability to make a downward departure from the otherwise mandatory minimum sentence as set out in N.C.G.S. § 90-95(h)(5) is entirely discretionary, *see State v. Hamad*, 92 N.C. App. 282, 289 (1988),

*aff'd per curiam*, 325 N.C. 544 (1989), and this discretion by the trial court is exercised at two points in the contemplative process. First, the trial court has the discretion to find that a defendant has rendered "substantial assistance in the identification, arrest, or conviction" of others involved in criminal activity. N.C.G.S. § 90-95(h)(5). Second, in the event that a trial court does determine that "substantial assistance" has been rendered by a defendant, the trial court retains discretion—as evidenced by the Legislature's choice of the phrase "[t]he sentencing judge *may* reduce" as opposed to "*shall* reduce"—to depart from the mandatory minimum sentence which is otherwise applicable to a defendant's conviction or convictions. *See id.* Thus, the plain language of N.C.G.S. § 90-95(4) is clear that a trial court is not required to reduce a sentence *even if the trial court finds that a defendant has provided "substantial assistance."*

¶ 16        A trial court's abuse of discretion "results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285 (1988) (citing *State v. Parker*, 315 N.C. 249 (1985)). An abuse of a trial court's discretion also occurs where "a trial judge acts under a misapprehension of the law." *State v. Nunez*, 204 N.C. App. 164, 170 (2010). The " 'accomplices, accessories, co-conspirators, or principals' [referenced in the statute] need not be involved in the case for which the defendant is being sentenced, and . . . [N.C.]G.S. § 90-95(h)(5) therefore permits the trial court

to consider [the] defendant's 'substantial assistance' in other cases." *State v. Baldwin*, 66 N.C. App. 156, 158, *aff'd per curiam*, 310 N.C. 623 (1984). In other words, a trial court may choose to reduce a defendant's sentence based upon his provision of substantial assistance in any case, not merely for the substantial assistance which was provided in the case for which the defendant is then being sentenced. It is this circumstance which the Court of Appeals dissent utilizes to suggest that the trial court may have abused its discretion by way of a misapprehension of law. The dissenting view speculated that:

> [T]he trial court may have improperly applied N.C.G.S. § 90-95(h)(5), as the trial court may have believed it could only apply substantial assistance to mitigate sentencing regarding cases on one date, based on the trial court's following statement:
>
> > There's no doubt in the [trial] [c]ourt's mind and based on everybody's testimony that [Defendant] deserves credit for substantial—[Defendant] deserves credit for substantial assistance that he provided . . . in the [*16 December 2016*] case. And he's—the way that credit is going to be delivered is to, therefore—therefore, consolidate—consolidate all the cases into the [7 February 2018] event[.]
> >
> > . . . .
> >
> > Everything is consolidated into that one offense for—for a mandatory—*there was no substantial assistance in that case*—for the mandatory sentence in that one[.]
>
> (Emphases added). It is not clear whether the trial court understood it could apply Defendant's substantial

> assistance to multiple cases on different dates—
> specifically, whether the trial court understood it could
> apply Defendant's substantial assistance regarding the 16
> December 2016 offense to both that offense and the 7
> February 2018 offense under N.C.G.S. § 90-95(h)(5).

*Robinson*, ¶ 28 (Murphy, J., dissenting) (alterations in original).

¶ 17        Defendant emphasizes that this excerpt from the sentencing hearing transcript potentially indicates that the trial court labored under a misapprehension of law which was similar to the matter addressed in *Baldwin*. Here, defendant submits that the trial court wrongly believed that it could only recognize defendant for his substantial assistance in the 2016 matter by making a downward adjustment, pursuant to N.C.G.S. § 90-95(h)(5), in the sentence imposed based upon defendant's conviction of his 2016 offense, and that such substantial assistance could not be "carried over" to support a downward departure in the sentence imposed based upon defendant's conviction of his 2018 offense. Defendant buttresses his view of the trial court's surmised confusion about the applicable law here by emphasizing that (1) the trial court "twice used the word 'mandatory' to describe the 90 to 120 month sentence it imposed, even though [defendant]'s assistance to [law enforcement] made such a sentence *discretionary* rather than *mandatory*" and (2) the trial court further explained its sentence of 90 to 120 months as "a very difficult sentence. It's a difficult sentence to impose. *But I don't get to—sometimes I just have to follow what the legislature says, and this is, I think, one of those times.*" Defendant summarizes his

appellate argument as follows:

> Under these circumstances—with [defendant]'s assistance bearing fruit far beyond what is typically expected; defense counsel asking for probation; and the State declining to object—the likeliest explanation for the trial court not granting a downward departure for the 2018 charge is that it did not realize it had the option.

¶ 18    In light of this assertion by defendant, we reiterate that N.C.G.S. § 90-95(h)(5) expressly gives discretion to a trial court to determine whether substantial assistance has been provided by a particular defendant. However, even if a trial court determines that substantial assistance has been provided *in any case*, the statute then provides the trial court with the discretionary *option* that "[t]he sentencing judge *may* . . . impose a prison term less than the applicable minimum prison term." N.C.G.S. § 90-95(h)(5) (emphasis added). Ultimately, the statutory provision unequivocally establishes that the trial court is not required to impose a reduced sentence even where a trial court has determined that a defendant provided substantial assistance. Thus, irrespective of the extent or value of defendant's substantial assistance, defendant's requested sentencing results from substantial assistance, or the State's position on the trial court's determination of substantial assistance, the trial court was empowered to determine whether to employ the option set forth in N.C.G.S. § 90-95(h)(5) to reward defendant for his assistance.

¶ 19    Applying this interpretation of the pertinent cited statutes and appellate case law to the instant case, we do not view the sentencing remarks by the trial court as

it openly shared its thought process in ruminating about the trial court's options and determinations, as suggesting any misunderstanding by the trial court of the discretion which it retained pursuant to N.C.G.S. § 90-95(h)(5). As reflected by the entirety of the trial court's commentary and the divulgence of the rationale underlying its sentencing choices, it readily appears that the trial court was fully familiar with its given statutory discretion to find that substantial assistance had been provided by defendant in one case and to impose a judgment which was less than the mandatory minimum sentence in light of defendant's substantial assistance, if the trial court desired to do so and in the dearth of any evident error in the record before us. *See State v. Williams*, 274 N.C. 328, 333 (1968) ("An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court.").

¶ 20        The trial court operated within its proper parameters of discretion in determining that defendant had rendered "substantial assistance" in connection with the 2016 trafficking charge but not with regard to the 2018 charge. Moreover, despite defendant's substantial assistance, the trial court permissibly elected to refrain from implementing a downward departure authorized in N.C.G.S. § 90-95(h)(5) to utilize the concept of substantial assistance to reduce the statutory criminal sentences established in N.C.G.S. § 90-95(4). Nevertheless, the trial court chose to employ its discretion pursuant to a different statute to afford consideration to defendant by

consolidating both of defendant's trafficking convictions and a third felony conviction for purposes of sentencing. *See* N.C.G.S. § 15A-1340.15(b) (2021) ("If an offender is convicted of more than one offense at the same time, the court *may* consolidate the offenses for judgment and impose a single judgment for the consolidated offenses." (emphasis added)). This discretionary election by the trial court resulted in a sentence for defendant which might have been longer than defendant requested, but was permissible in the trial court's discretion. Although the trial court was not required to justify or explain its sentencing decisions in this matter, the transcript in this case indicates that the trial court weighed appropriate factors and circumstances in reaching its determinations regarding sentencing.

¶ 21      We agree with the lower appellate court that the acceptance of defendant's no-merit brief was appropriate pursuant to the principles enunciated in *Anders* and in *Kinch*. We further agree that the trial court did not abuse its discretion in its sentencing considerations. Accordingly, the decision of the Court of Appeals finding no error in defendant's sentence is affirmed.

AFFIRMED.

Justice EARLS dissenting.

"[A]n abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." *Koon v. United States*, 518 U.S. 81, 100 (1996); *see also In re Estate of Skinner*, 370 N.C. 126, 146 (2017) (Morgan, J, dissenting) ("It is well-established in this Court's decisions that a misapprehension of the law is appropriately addressed by remanding the case to the appropriate lower forum in order to apply the correct legal standard." (first citing *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 523 (1990); and then citing *State v. Grundler*, 249 N.C. 399, 402 (1959), *cert. denied*, 362 U.S. 917 (1960))).

"When the exercise of a discretionary power of the court is refused on the ground that the matter is not one in which the court is permitted to act, the ruling of the court is reviewable." *State v. Ford,* 297 N.C. 28, 30–31, 252 S.E.2d 717, 718 (1979), *quoted in State v. Brogden*, 334 N.C. 39, 46 (1993). Here, there was ample evidence that the trial court mistakenly believed it was prohibited from exercising its discretionary power to grant Mr. Robinson a downward sentencing departure from the mandatory minimum sentence for drug trafficking for his February 2018 offense based on substantial assistance that he provided to law enforcement after his December 2016 offenses. *See* N.C.G.S. § 90-95(h)(5) (2021). I therefore dissent from the majority's conclusion that "the trial court was fully familiar with its given statutory discretion . . . to impose a judgment which was less than the mandatory

minimum sentence in light of defendant's substantial assistance." This matter should be remanded to the trial court for re-sentencing.

¶ 24     A criminal defendant's "substantial assistance" can be used to mitigate the sentence for a crime other than the one in which the substantial assistance was provided. *See State v. Baldwin*, 66 N.C. App. 156, 158, *aff'd per curiam*, 310 N.C. 623 (1984). But a review of the record reveals that the trial court was unaware of this flexibility. For example, during sentencing the trial court stated:

> There's no doubt in the Court's mind and based on everybody's testimony that he deserves credit for substantial -- Mr. Robinson deserves credit for substantial assistance that he provided to Detective Jeter in the December 16, 2016, case. And he's -- the way that credit is going to be delivered is to . . . consolidate all the cases into the February 7th, 2018, event . . . everything is consolidated into 18CRS67753. The trafficking by possession from December 16th, the possession of the firearm by felon from December 16th is all -- they're all consolidated into the 18CRS67753.
>
> . . . .
>
> So on that -- that one -- that one case, it's a Level II trafficking offense between fourteen and twenty-seven grams of heroin, a Class E felony. Everything is consolidated into that one offense for -- *for a mandatory -- there was no substantial assistance in that case -- for the mandatory sentence* in that one Class E offense of 90 to 120 months in the Department of Corrections.

(Emphasis added.) In short, to credit Mr. Robinson for his substantial assistance provided directly after the 2016 offenses, the trial court consolidated Mr. Robinson's

sentence for the 2016 offenses with his sentence for the 2018 offense. As a result of the consolidated sentences, Mr. Robinson would functionally serve only one sentence for the 2018 offense.

¶ 25    The trial court was free to determine that this was the proper way to credit Mr. Robinson for *both* of his convictions based on the assistance Mr. Robinson provided law enforcement. But throughout this process, the trial court expressed its view that Mr. Robinson "deserve[d] credit for substantial assistance that he provided . . . in the December 16, 2016 case." Meanwhile, the trial court seemed to believe that it was required to give Mr. Robinson the mandatory sentence for the conviction arising out of his 2018 offense because "there was no substantial assistance in that case." This indicates that the trial court mistakenly believed it could *only* credit Mr. Robinson for his substantial assistance by reducing his sentence for the conviction arising from his 2016 offenses.

¶ 26    The trial court's mistaken interpretation of the law is further demonstrated in an exchange between the trial judge and Mr. Robinson when Mr. Robinson asked the trial court to repeat the sentence that had been handed down. The trial court explained:

> It's 90 to 120 months. It is what it is, but it's what the legislature set forth as for the punishment for this -- this type of case. I know. It's a very difficult sentence. It's a difficult sentence to impose. But I don't get to -- sometimes I just have to follow what the legislature says, and this is, I think, one of those times.

Again, in stating that it had to "follow what the legislature [said]," the trial court appeared to believe itself bound by the mandatory minimum sentences prescribed in N.C.G.S. § 90-95(h)(4)(b).

Whether the trial court was obligated to grant Mr. Robinson a reduced sentence in exchange for providing information to law enforcement is not at issue here. All parties, including Mr. Robinson, recognize this decision is a matter that is purely within the trial court's discretion. The trial court was, however, obligated to *understand* the statutory constraints placed upon it, as well as the correct bounds of the discretion it is afforded. The evidence in the record demonstrates that the trial court did not understand the latter. This is not a matter of assuming error on the part of the trial court but rather reading the transcript fairly and acknowledging the error that occurred.

The ramifications of failing to properly credit Mr. Robinson for the assistance he provided implicate important public policy concerns by threatening law enforcement's crime prevention efforts. "[O]ur criminal justice system could not adequately function without information provided by informants." *United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993); *see also* Alexandra Natapoff, *Snitching: The Institutional and Communal Consequences*, 73 U. Cin. L. Rev. 645, 655 (2004) (explaining that "[o]ur justice system has become increasingly dependent on criminal informants over the past twenty years"). Informants are particularly

indispensable to the prosecution of drug crimes. *See, e.g., Law Enforcement Confidential Informant Practices: Joint Hearing Before the Subcomm. on Crime, Terrorism, & Homeland Sec. & the Subcomm. on the Const., Civ. Rts., & Civ. Liberties of the H. Comm. on the Judiciary*, 110th Cong. 66 (2007) ("Informants are a cornerstone of drug enforcement. It is sometimes said that every drug case involves a snitch." (statement of Alexandra Natapoff, Professor of Law, Loyola Law School)); Natapoff, *Snitching*, 73 U. Cin. L. Rev. at 655 ("[N]early every drug case involves an informant, and drug cases in turn represent a growing proportion of state and federal dockets.").

¶ 29     As Mr. Robinson's counsel explained during sentencing proceedings, one benchmark for assessing the substantial assistance provided is whether that assistance resulted in "get[ting] the same amount [of drugs] off the street that you . . . were caught with." In this case, the results far exceeded that benchmark. The information Mr. Robinson provided led directly to three ounces of heroin, two ounces of cocaine, two firearms, and approximately $18,000 being recovered. That information led officers to other cases, allowing them to ultimately recover four ounces plus twelve kilos of cocaine, over $87,000, two additional firearms, and a motor vehicle. As Officer Jeter testified, sometimes information provided by an informant simply "stops with the next individual, but in this case [law enforcement] kept climbing up the ladder." Officer Jeter recognized that this "ladder" could be "traced

back to the initial information that Mr. Robinson provided" and that the last drug bust to which Mr. Robinson's assistance led yielded a substantial amount of illegal narcotics and guns.

¶ 30     Mr. Robinson's case demonstrates the efficacy of using informants to uncover illegal drug operations. But failing to properly credit criminal defendants for the information they provide reduces their incentives to cooperate with law enforcement. There is thus a significant public interest in ensuring that the trial court correctly understood the breadth of its discretion to reduce not just Mr. Robinson's sentence for his 2016 offenses, but for his 2018 offense as well.

¶ 31     Because the record demonstrates that the trial court did not understand the scope of its discretion, I would reverse and vacate the Court of Appeals' holding that these facts do not give rise to any "arguable issues," *State v. Robinson*, 2021-NCCOA-533, ¶ 16, and remand this case to the trial court for re-sentencing in line with the correct understanding of the trial court's discretion under N.C.G.S. § 90-95(h)(5).