Milan H. KING, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6835.

Court of Appeals of Alaska.

April 30, 1999.

Maria Bahr, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

William H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Under AS 11.41.420(a)(3)(B), a person commits second-degree sexual assault if they engage in sexual penetration with a person who is "incapacitated". At the time of the events in this case, AS 11.41.470(2) defined "incapacitated" as "temporarily incapable of appraising the nature of one's own conduct and physically unable to express unwillingness to act". In this appeal, we are asked to decide whether a sleeping person can be "incapacitated" under this definition. We conclude that the answer is yes.

On March 14, 1997, A.C. traveled from Fairbanks to Anchorage; she spent the night at the home of her daughter and son-in-law. Milan H. King was renting a room at that residence.

That night, A.C. went to bed fully clothed. She awoke to the sound of a man calling her a "bitch". That man—Milan King—had removed A.C.'s pants and underwear, and he was now lying on top of her, engaged in sexual intercourse with her.

During her first few seconds of semi-consciousness, A.C. thought that she was having sex with her boyfriend. Then she remembered that she was now in Anchorage, while her boyfriend was still in Fairbanks. When A.C. realized that the man on top of her could not be her boyfriend, she woke up completely. She grabbed King's head, pushed him off of her, and ran into the living room to summon help from her daughter and son-in-law.

King was indicted for sexual assault in the second degree. The State alleged alternative theories of why King's act of sexual penetration constituted this offense: first, because A.C. was incapacitated[1], and second, because A.C. was unaware that a sexual act was occurring[2]. The jury convicted King under the first theory: that A.C. was incapacitated.

On appeal, King argues that the State's evidence was insufficient to support a finding that A.C. was "incapacitated" as that term was defined in the 1997 version of AS 11.41.470(2). He contends that the definition of "incapacitated" does not include unconsciousness due to sleep.

As noted above, the 1997 definition of "incapacitated" required the State to prove two things: that A.C. was "temporarily incapable of appraising the nature of [her] conduct", and that A.C. was "[temporarily] physically unable to express unwillingness to act".

■ Viewed in the light most favorable to upholding the jury's verdict, the evidence shows that King disrobed A.C. and sexually penetrated her while she was unconscious

---

1. AS 11.41.420(a)(3)(B).

2. AS 11.41.420(a)(3)(C).

and unaware that this was happening. From this evidence, the jury could reasonably conclude that A.C. was "temporarily incapable of appraising the nature of [her] conduct"— incapable of understanding that she was engaged in sexual penetration with King.[3] A.C. later awoke and realized what was happening. But the evidence clearly supported the conclusion that King's initial penetration of A.C. occurred while A.C. was unconscious.

██ The remaining question is whether the evidence supported a finding that A.C. was temporarily "physically unable to express unwillingness to act". Viewed in the light most favorable to upholding the verdict, the evidence showed that King disrobed A.C. and penetrated her while she was unconscious and unresisting. The jury could reasonably conclude that, because A.C. was asleep, she was temporarily physically unable to express unwillingness to engage in sexual penetration with King.

When this issue was argued in the trial court, the trial judge expressed his opinion that people who are asleep are still physically capable of resisting the assaultive acts of others. The judge pointed out that people sometimes struggle while dreaming that they are being attacked. Based on such occurrences, the judge expressed doubt that sleeping people can ever be deemed "incapacitated" within the meaning of the statute.

██ We do not share such doubts. We grant that sleeping people may at times physically struggle, while unconscious, when they dream that they are being attacked. But the fact that sleepers react to their dreams does not mean that they would be capable of recognizing and resisting actual assault.

Moreover, the trial judge appears to have assumed that all sleeping people exhibit the same degree of consciousness or unconsciousness, and that any particular sleeping person will exhibit the same degree of consciousness or unconsciousness throughout the several hours of their sleep cycle. Such assumptions are seemingly at odds with common experience: some people sleep more soundly or fitfully than others, and, during the course of sleep, an individual will go through varying periods of deep and light sleep.

But assuming, for purposes of argument, that a person might be capable of physically resisting an assault even though asleep, the question before the jury was whether one particular individual—A.C.—was physically unable to express unwillingness to engage in sexual activity at the time of King's assault. This question of fact could not be answered by generalities about the characteristics or capabilities of sleeping people. It had to be answered by an examination of the evidence in this case. For this reason, the question was properly presented to the jury. And, as we have explained, the evidence supported a reasonable conclusion that A.C., at the time of the assault, was physically unable to express unwillingness to engage in sexual penetration with King.

King presents an alternative argument, one based on statutory construction. He asserts that, even though the wording of AS 11.41.470(2) could be interpreted to include people who are unconscious due to sleep, the legislature never intended for this statutory definition to include sleeping people.

The words used in AS 11.41.470(2) are not terms of art; they are common English words. Taking these words in their normal meaning, sleep appears to qualify as a form of incapacity. It is therefore King's burden to show that the legislature did not mean what they appear to have said. Moreover, because the statute "appears clear and unambiguous, ... [King] bears a correspondingly heavy burden of demonstrating contrary legislative intent."[4]

King argues that the legislature could not have intended to include sleeping people among the "incapacitated" because another subsection of the second-degree assault statute, AS 11.41.420(a)(3)(C), refers to people who are "unaware" that a sexual act is occurring. This subsection, King asserts, is the

---

**3.** *See* AS 11.81.900(b)(56)(C) ("[E]ach party to any of the acts defined as 'sexual penetration' is considered to be engaged in sexual penetration").

**4.** *University of Alaska v. Tumeo,* 933 P.2d 1147, 1152 (Alaska 1997).

portion of the statute that applies to sleeping people.

The State suggests an alternative and plausible reading of subsection 420(a)(3)(C). The legislature added subsection (3)(C) in 1992 in the wake of a notorious criminal case brought against a male gynecologist who inserted his penis, rather than a speculum, into his patients. In such instances, sexual penetration is perpetrated by subterfuge; the victim is conscious and physically able to express their unwillingness to be a party to the sexual penetration, but they are unaware that sexual penetration is occurring.

We grant that a person who is asleep may be "unaware" that sexual activity is taking place, as that term is defined in subsection (3)(C). But the fact that subsections (3)(B) and (3)(C) overlap—the fact that they may both apply to sleeping victims—does not invalidate either subsection, nor does it suggest that the legislature wished one subsection to be applied to the exclusion of the other. Title 11 is filled with statutes that have potentially overlapping subsections.[5]

For these reasons, we conclude that the definition of "incapacitated" persons codified in AS 11.41.470(2) can apply to people who are asleep. We note that other courts, applying analogous statutes, have reached the same conclusion.[6]

And, as explained above, we further conclude that the evidence presented at King's trial supports the conclusion that A.C. was incapacitated when King sexually penetrated her. Thus, the evidence is sufficient to support the jury's verdict that King was guilty of second-degree sexual assault.

The judgement of the superior court is AFFIRMED.

---

5. See, for example, AS 11.41.110(a)(1)-(2), AS 11.41.200(a)(1)-(3), and AS 11.46.730(a)(1)-(3).

6. *See State v. Rush*, 278 N.J.Super. 44, 650 A.2d 373, 374 (1994); *State v. Puapuaga*, 54 Wash. App. 857, 776 P.2d 170, 171–72 (1989); *State v. Moorman*, 82 N.C.App. 594, 347 S.E.2d 857, 859 (1986), *reversed on other grounds*, 320 N.C. 387, 358 S.E.2d 502 (1987).